## BURNS v. UNITED STATES.

### No. 19610.

District Court, E. D. Pennsylvania.

Feb. 28, 1938.

R. Lester Moore, of Philadelphia, Pa., for plaintiff.

J. Cullen Ganey, U. S. Dist. Atty., and Thomas J. Curtin, Asst. U. S. Dist. Atty., both of Philadelphia, Pa., for defendant.

MARIS, District Judge.

This is a suit under the Tucker Act, 28 U.S.C.A. § 41 (20), by J. Rouse Burns, a resident of the Eastern District of Pennsylvania, to recover income tax claimed to have been illegally assessed and collected for the year 1932. From the evidence I make the following

### Special Findings of Fact.

The plaintiff was admitted to the bar of Pennsylvania in 1926. He was then twenty-three years of age and had a substantial income as life beneficiary of his grandfather's estate. In 1927 his former guardian, Edgar C. Van Dyke, an older member of the Philadelphia Bar, interested him in investing $38,100 in stock of a corporation called the Federal Sand & Gravel Company which was being promoted by Mr. Van Dyke, his brother, J. B. Van Dyke, and William B. Gray, an engineer.

After making the investment plaintiff realized that he was unfamiliar with the proposed business and consulted a law school classmate, Carl H. Anderson, whose father had been in the contracting business. Mr. Anderson and his father advised the plaintiff to withdraw his investment as quickly as possible. As a result, after negotiations, on August 18, 1927, the plaintiff received for his stock from Edgar C. Van Dyke, J. B. Van Dyke and William B. Gray ten notes

personally signed by them for $3,810 each and maturing serially each year commencing August 18, 1928.

When the first note for $3,810 fell due on August 18, 1928, it was discovered that Gray had disappeared and that J. B. Van Dyke was without assets. Edgar C. Van Dyke was thus the only responsible party. Suit was accordingly brought against him on the note and judgment was entered thereon. It appeared, however, that he had no assets in Philadelphia other than his office furniture and law library and the judgment was accordingly transferred to Chester County, since he lived in Devon in that county. Upon his urgent request and in consideration of his promises to pay off the judgment, as well as to pay the other notes when they fell due, the plaintiff, upon the recommendation of Mr. Anderson, withheld levy and execution.

At that time both the plaintiff and Mr. Anderson investigated the standing of Mr. Van Dyke. He was a prominent member of the Philadelphia Bar, maintaining a large suite of law offices in a centrally located building, and he appeared to have an extensive and lucrative practice. He had been attorney for the plaintiff's grandfather's estate, which was a large one, and he had received a large fee from the estate in 1926 and was still handling its legal affairs. He had a large and valuable home in Devon, the title to which was in his wife's name, and he, himself, had a one-fourth interest in a valuable property there known as the Devon Park Hotel property. He informed the plaintiff and Mr. Anderson that his practice was very good and that he had a great deal of work and that although fees were slow in coming in he believed his income would be sufficient to meet the notes. He assured them that even if this were not the case his other property interests would be sufficient to take care of this indebtedness.

During each of the years 1928 to 1931, inclusive, Mr. Van Dyke's personal income was more than sufficient to meet his obligations upon the notes falling due in those years. He himself admitted that he could have paid those notes had he actually been forced to do so. He did in fact make payments upon the judgment entered on the first note in 1929 of $700, and in 1930 of $175, a total of $875. In 1932 his income declined further and in that year he lost his home through foreclosure proceedings. At that time he reached the point where he found himself unable to meet his obligations and notified the plaintiff that he would not be able to pay either the past due notes or those which would fall due in the future. The plaintiff then ascertained for the first time that the five notes which had matured during the years 1928 to 1932, inclusive, had become worthless.

The plaintiff kept no books, but in the joint income tax return filed by his wife and himself on March 15, 1933, for the year 1932 he claimed a deduction as a bad debt of the principal amount of the five notes $19,050, with interest of $3,429, or a total of $22,479. This deduction was disallowed by the Commissioner of Internal Revenue, who assessed a deficiency in tax in respect thereof of $6,089.74. This deficiency the plaintiff paid on December 11, 1934, with interest of $635, or a total of $6,724.74. His claim for the refund thereof filed May 14, 1935, was rejected July 29, 1936.

### Discussion.

■ This case raises two questions of fact. They are whether the five notes payable by Mr. Van Dyke to the plaintiff were ascertained by him to be worthless in the year 1932 and whether he charged them off as a bad debt in that year. The first question must be answered in the affirmative. As I have found, the plaintiff first ascertained the notes to be worthless in that year. From the evidence I am satisfied that prior to that year he believed that collection of the notes, although slow, would ultimately be effected.

■ As to the second question it appeared that the plaintiff kept no books of account. It was, therefore, not possible for him to charge the notes off upon his books. He did, however, charge them off in his own mind and he followed up his mental determination by claiming the deduction in his income tax return. This was a sufficient compliance with the statute. Jones v. Commissioner, 7 Cir., 38 F.2d 550; Stephenson v. Commissioner, 8 Cir., 43 F.2d 348; Shiman v. Commissioner, 2 Cir., 60 F.2d 65.

■ The Government urges, however, that the notes in fact became worthless before 1932 and the plaintiff in the exercise of reasonable diligence should have ascertained that fact. To this I cannot agree, however. In the first place the notes did not become worthless until 1932, since I have found that collection of them could have been enforced up to the end of 1931. But even if this were not so I feel that

the Government seeks to impose too heavy a burden upon the plaintiff. The ascertainment of the worthlessness of a debt calls for the exercise of sound judgment, but not of prophetic insight. Here the plaintiff was a young lawyer dealing with a much older and well established practitioner who had every appearance of prosperity. The facts which he ascertained as a result of his investigations did not require from him a determination of the worthlessness of the notes prior to 1932.

The plaintiff claimed as an additional deduction the accrued interest on the notes. He now concedes that this is not allowable and confines his claim to the face amount of the five notes, $19,050. This must be reduced, however, by the amount of the payments which he received, $875, leaving him an allowable bad debt deduction for the year 1932 of $18,175. I, therefore, reach the following conclusions of law:

Notes payable by Edgar C. Van Dyke to the plaintiff in the sum of $18,175 were ascertained by him to be worthless and charged off within the taxable year 1932 and were, therefore, deductible as a bad debt from his gross income for income tax purposes in that year.

The plaintiff is entitled to recover the tax exacted from him in respect of this bad debt which was disallowed by the Commissioner of Internal Revenue.

I accordingly find in favor of the plaintiff and against the defendant. The damages to which the plaintiff is entitled must depend upon a recomputation of his income tax liability upon the basis of the bad debt deduction which I have allowed. The parties may submit an assessment of damages upon which, when approved, judgment may be entered.