JOHN F. B. MITCHELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17461.. Promulgated September 26, 1949.

*W. Mason Smith, Jr., Esq.,* for the petitioner.
*Walt Mandry, Esq.,* for the respondent.

370

**OPINION.**

HILL, *Judge*: On December 1, 1944, petitioner charged off on his books to the extent of $21,161.08 three demand notes of his partner, C. O. M. Sprague, upon which a total balance of $22,161.08 was owing. Later the same day petitioner sold these notes to Irving Sprague, brother of the debtor, for $1,000. Similarly, on December 5, 1944, petitioner charged off on his books in the amount of $14,637.46 three demand notes of his partner, John Whipple, upon which a total balance of $15,137.46 was owed. At a subsequent hour that day he sold these obligations to Lawrence Whipple, brother of the debtor, for $500. The sole question for our determination is to what, if any, deductions the above transactions entitled petitioner for the taxable year 1944. Petitioner contends that he should have been allowed partial bad debt deductions of $21,161.08 on Sprague's three notes and $14,637.46 on Whipple's three notes. In the alternative, he argues that he should be granted long term capital loss deductions on the sales of the notes to the extent he is denied bad debt deductions. Respondent maintains petitioner is not entitled to partial bad debt deductions on three grounds: First, because the petitioner released the debtors from their obligations for business reasons; secondly, because the debts became worthless prior to the taxable year; and, finally, in the alternative, because the sales of the notes resulted in capital losses.

We are not persuaded by respondent's first two reasons for disallowing the partial bad debt deductions claimed by petitioner, because the evidence fails to show that petitioner released Sprague and Whipple from their obligations on the notes. Yet we are in accord with respondent's view that the sales of the Sprague and Whipple notes in 1944 did foreclose petitioner from taking partial bad debt deductions on them. It is settled that where a taxpayer sells or exchanges an obligation for less than the amount owing thereon and later in the same taxable year charges off the difference on his books, he is not entitled to a partial bad debt deduction on the

obligation. See *McClain* v. *Commissioner*, 110 Fed. (2d) 878; affd., 311 U. S. 527; *Ralph Perkins*, 41 B. T. A. 1225; affd., 125 Fed. (2d) 150; *Leslie H. Reed*, 45 B. T. A. 1130; affd., 129 Fed. (2d) 908; *Maurice Levy*, 46 B. T. A. 423; affd., 131 Fed. (2d) 544; certiorari denied, 318 U. S. 780. We are convinced that the result is the same even though the charge-off of the debt takes place prior to its sale, as long as both events occur in the same taxable year.

Petitioner's argument that a partial bad debt deduction is not defeated by sale of the debt within the same taxable year where the charge-off precedes the sale runs contrary to the system of annual accounting required by Federal income tax law. Petitioner would have us judge the partial deductibility of a bad debt upon the occurrence of partial worthlessness and charge-off without regard to the effect of a subsequent sale of the debt before the close of the taxpayer's accounting period. But the appropriateness of an income tax deduction is not based upon a separate examination of each of the taxpayer's transactions in the order of their occurrence during the taxable year; rather it is determined by viewing the net result of all the taxpayer's transactions taking place during the twelve-month period. As the Supreme Court said in *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359, 363:

> All the revenue acts which have been enacted since the adoption of the Sixteenth Amendment have uniformly assessed the tax on the basis of annual returns showing the net result of all the taxpayer's transactions during a fixed accounting period * * *.

In the instant case petitioner sold all six notes during 1944 and so no indebtedness to him existed on these obligations at the close of his accounting period; yet an essential prerequisite of a bad debt deduction is the existence of a debt owing to the taxpayer. See *Luke & Fleming, Inc.*, 1 B. T. A. 12, and *Emil Weitzner*, 12 B. T. A. 724. Without the notes, petitioner had nothing on which to base a bad debt deduction at the close of 1944. True, the charge-offs were made earlier in the year, but their effectiveness for deduction purposes must be judged at the close of 1944, at which time they had lost their significance, due to the disposal of the obligations to which they were related. Cases cited by petitioner in support of his proposition are readily distinguishable from the instant case on the facts. We hold that petitioner was not entitled to partial bad debt deductions on these notes.

Both parties agree that in 1944 all six notes constituted capital assets in the hands of petitioner within the meaning of section 117, that he held them over six months, and that their sale in December was bona fide. We therefore hold that petitioner was entitled to long

term capital losses on the sale of Sprague's three notes and the sale of Whipple's three notes, based in each instance on the difference between the face value of the notes minus all repayments and the sale price.

Reviewed by the Court.

*Decision will be entered under Rule 50.*