**PATERSON v. UNITED STATES.**
Civ. A. No. 1102.

United States District Court
S. D. Alabama, S. D.

June 29, 1954.

Thomas E. Twitty of Inge, Twitty, Armbrecht & Jackson, Mobile, Ala., for plaintiff.

Edward W. Rothe, Sp. Asst to the Atty. Gen., for defendant.

THOMAS, District Judge.

This is an action under 28 U.S.C.A. § 1346(a)(1) to recover income tax alleged to have been illegally assessed and collected for the year 1947.

On September 1, 1947, the J. E. Paterson Lumber Company, which had previously been operated by the plaintiff individually, was incorporated. In connection with this change in ownership, the accounts of the company were examined and certain debts were determined to be worthless. These were charged off, and this disposition reported on plaintiff's individual tax return. Upon an audit of the return, the charge-off as to four of these debts was disallowed. Also, in 1947, the Paterson Plastics Company, solely owned by plaintiff,

incurred expenses in the amount of $5,216.22. This amount was treated as an ordinary and necessary business expense by the plaintiff, but when the audit of his return was made, such method of treatment was disallowed. This controversy, then, involves two questions: (a) whether the plaintiff's determination as to the worthlessness of the debts in 1947 was correct; and (b) whether the expenses incurred by Paterson Plastics Company were ordinary and necessary business expenses, or were costs which should have been capitalized.

### Findings of Fact

1. *The Allen debt:* On August 31, 1947, the plaintiff charged off as worthless the debt of T. J. Allen for materials purchased in the amount of $1,185.02. Of this charge-off, $609.06 was disallowed. This amount consists of $384.06 paid to plaintiff by Miss Zieman in the latter part of 1948 and 1949, and $225 received by the plaintiff from the purchaser of Allen's property in January 1948. T. J. Allen, a contractor, had entered into a contract with Miss Zieman to move a house and remodel it at its new location. The materials used in making the repairs were purchased by Allen from the plaintiff. After being fully paid by Miss Zieman, Allen left town prior to the completion of the work, and he could not be located. Following his disappearance, Miss Zieman received a bill from the plaintiff addressed to Allen at the location where the repairs were being made. Subsequent discussions between the plaintiff and Miss Zieman resulted in her verbal promise to pay, as and when she could, the sum of $384.06, which represented an estimate of the materials used in her house. Since she was not indebted to Allen, it appears that her undertaking to pay plaintiff was founded upon a moral, rather than a legal obligation, and as such was not enforceable. The second payment of $225 on the Allen debt resulted from settlement of a materialman's lien upon property of Allen which was being sold. It was doubtful that materials of the plaintiff could be shown to have been used in the building, but rather than contest the lien, the purchaser settled, and payment was made to plaintiff in January 1948.

2. *The Conley debt:* In 1947, H. R. Conley, a contractor, was indebted to the plaintiff in the amount of $1,963.93. On August 31, 1947, this debt was charged off as worthless and so reported on plaintiff's tax return for the calendar year 1947. Mr. Conley developed goiter trouble in 1946, necessitating an operation in the spring of 1947. Upon Mr. Conley's return to Mobile in the summer, plaintiff contacted him relative to the indebtedness. At that time Mr. Conley's return to good health was in extreme doubt, and he had learned that an employee who managed his business during his illness had absconded with considerable assets. Faced with this situation, his liabilities exceeded his assets by some $16,000. Plaintiff was advised of these conditions and of the fact that an attempt to collect would necessitate bankruptcy and effect very little recovery. Mr. Conley stated that, if and when he was able, he would endeavor to liquidate the debt. In view of these circumstances, plaintiff did not proceed toward collection. In the latter part of 1947, $200 was paid to the plaintiff, and was treated as a bad debt recovered for that year. Mr. Conley regained his health, continued his business, and paid the debt in full during 1948–1949.

3. *The Shambeau debt:* This debt was likewise determined to be worthless and charged off by the plaintiff on August 31, 1947. The last payment on the account was in 1944, though repeated efforts had been made to collect this debt. The levying of a materialman's lien was considered, but investigation disclosed that the building was on land of a third party. The tax assessment records introduced by the government upon the trial indicate that Shambeau was not insolvent. The debt was referred to attorneys, after it was charged off, and payment in full was had on January 12, 1948, shortly before the case against Shambeau was set for trial.

4. *The Salazar debt:* This debt, in the amount of $564.99, was determined to be worthless and charged off on August 31, 1947. At that time Salazar was indebted to the plaintiff in a considerable amount, not here involved, and the plaintiff was endeavoring to decrease that indebtedness as rapidly as possible. During the year in question (1947), Salazar was employed by the Alabama Dry Dock & Shipbuilding Company, and was making agreed payments to the plaintiff. Salazar was also employed as a commission agent by the Paterson Manufacturing Company (wholly owned by plaintiff). Salazar's work with Alabama Dry Dock & Shipbuilding Company was terminated during 1947. While it is true that plaintiff was able to collect some money out of Salazar during the years 1947 and 1948, plaintiff had a right to determine to which debts those collections should be applied. It it also true that suit was not filed on this account, and that suit was filed on a note, judgment obtained, and collection in full made some three years later.

5. *Expenses of Paterson Plastics Company:* During the year 1947 the Paterson Plastics Company incurred expenses of $5,216.22, the greater part thereof being for salaries. The company was organized in 1939 for the development of a process for and the manufacture of plastics. In later years, the intention to manufacture the plastics was discarded in favor of the idea to license the process to other manufacturers. Thereafter, the company engaged in an endeavor to perfect the process and to secure a patent thereon. The work incident to the perfecting of the process was completed the first part of January 1947. The patent was applied for in July 1947, and granted in September 1949. The operations of the company after the process was perfected were not in futherance of securing the patent and did not add to the value of the patent. The work carried on during 1947 was the development and operation of a pilot plant to interest prospective purchasers or licensees, and to demonstrate that plastics could be profitably manufactured under the pending patent. This was an expenditure incident to the sale or licensing of the process to prospective licensees, and did not enhance the value of the patent. The fact that the process of manufacture was not licensed to anyone during the year does not change the nature of the expense. Examination of the expenses of the company shows payment on January 8, 1947, of $227.50 for testing fees. This was in furtherance of perfecting the process. The expenses of the company also show payment of $375 to patent attorneys, which was incident to securing the patent. Of the expenditures of the company, $4,613.72 was for ordinary and necessary business expenses; and $602.50 was for expenditures which should have been capitalized.

### Conclusions of Law

1. The plaintiff has the burden of proving that the debt did, in fact, become worthless during the year in which the deduction is claimed.

2. The question of worthlessness is to be determined by sound judgment, based upon the relevant facts as they exist at the time the determination of worthlessness is made. Subsequent events relate only to the soundness of the judgment exercised and not to the fact of worthlessness. Burns v. United States, D.C., 34 F.Supp. 398; New York Water Service Corp., 1949, 12 T.C. 780.

3. Plaintiff has sustained the burden of proof as to the correctness of the determination of the worthlessness during the year 1947 of the Allen, Conley, Shambeau, and Salazar debts.

4. As the expenditures, except as enumerated, did not result in the acquisition, development or improvement of the patent, but rather were incident to efforts to license the process, they were properly reported by the plaintiff as ordinary and necessary business expenses.

A judgment in accordance herewith will be prepared and submitted by counsel.