Von Hoffmann Corporation v. Commissioner.
Von Hoffmann Corp. v. Commissioner
Docket No. 62190.
United States Tax Court
T.C. Memo 1957-127; 1957 Tax Ct. Memo LEXIS 124; 16 T.C.M. (CCH) 546; T.C.M. (RIA) 57127; July 11, 1957
*124 Petitioner sold all of the outstanding stock of a corporation to Smith. The corporation was indebted to petitioner in the amount of $65,000. Later petitioner assigned the $65,000 note to Smith for $500. Petitioner, on the same day as the assignment, charged off $64,500 as a bad debt loss. Held, petitioner was only entitled to a capital loss deduction under section 117(a)(1), Internal Revenue Code of 1939. Robert P. Smith, Esq., Bowen Building, Washington, D.C., for the petitioner. Hunter D. Heggie, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined a deficiency in income tax of petitioner for the taxable year 1952 in the amount of $16,823.17. The respondent disallowed an item of $64,500 which the Von Hoffmann Corporation, hereinafter referred *125 to as the petitioner, took as a bad debt deduction in 1952. The sole issue in this case is whether the item disallowed can properly be deducted as a bad debt, as contended by the petitioner, or must be treated as a capital loss on the sale of a capital asset, as contended by the respondent. Findings of Fact Some of the facts were orally stipulated and are found accordingly. The petitioner is a corporation organized under the laws of Missouri with its principal offices in St. Louis. For the calendar year 1952 the corporation income tax return was filed with the district director of internal revenue, St. Louis, Missouri. The Von Hoffmann Systems Corporation, hereinafter referred to as Systems, was organized as a Missouri corporation on June 29, 1950. Its total issued and outstanding stock was acquired by petitioner for $10,000. Systems was formed for the purpose of engaging in the sale of business systems and printed forms. The business did not prosper as hoped for and within a year petitioner had loaned to Systems a total of $65,000. The loans were reduced to a single demand note prior to December 1951. In December 1951 it was apparent to the president of petitioner corporation, *126 William D. McCoy, that the business was a failure. Also in December 1951, L. B. Smith offered to purchase and did purchase the stock of Systems from petitioner for $10,000. Smith then assumed full control and management of Systems. The only interest petitioner had in Systems after December 1951 was the demand note of $65,000. Within approximately three months after assuming control of Systems, Smith discovered that the inventory of Systems was practically worthless and the business was a failure. Smith thereupon wrote petitioner a letter, dated February 29, 1952, as follows: "Reference is made to your note in the amount of $65,000.00 due from the Von Hoffmann Systems Corporation. "When I took over the stock of this company, I had hoped to develop the business of this corporation and to dispose of the inventory in an amount which would be sufficient to pay off your note in full and put the corporation on a sound business basis. I now find, after diligent efforts to accomplish the above purposes, that the material comprising the inventory is unsaleable except for junk. Efforts have been undertaken to sell such inventory to other stationery and card index companies, but it has *127 been found that such potential customers who might otherwise have used this material have refused to buy it on the ground that it bears the mark of Von Hoffmann Systems. "In view of the foregoing, it will not be possible to pay your account and this company can continue in business only by engaging in a new line of activity which will necessitate the supplying of additional new capital which I am unwilling to do with your obligation outstanding. Consequently, it appears that your account is substantially worthless except for the small amount which might be recovered if the company were to go into bankruptcy. "If the company were placed in receivership, considerable expense would be incurred in liquidating the corporation and I estimate that there would not be available for distribution to you more than $500, and I am inquiring if you would be interested in assigning your account to me for that amount, since the only alternative is to allow the company to proceed to bankruptcy or receivership. "I shall be pleased to hear from you as soon as possible regarding this suggestion. You may be assured that I will not put any more capital into the company or undertake to put in a new *128 type of business with your account outstanding, and I am quite certain that the amount you would receive on your account following receivership would not exceed $500.00." After receipt of the above letter McCoy examined a balance sheet of Systems and determined that, in view of the circumstances, it would be to petitioner's advantage to accept the offer of $500. The demand note was thereafter endorsed by petitioner over to Smith and petitioner received a personal check from Smith in the amount of $500. The $65,000 note was still due and outstanding on the books of Systems and its successor corporation as late as December 1954. As a result of the transactions above, the petitioner claimed a bad debt deduction in the amount of $64,500 in 1952. The respondent termed the transaction between petitioner and Smith a sale of a capital asset from which petitioner suffered a capital loss and disallowed the bad debt deduction. Opinion The issue for our decision is whether or not petitioner is entitled to a deduction for a bad debt in 1952. The petitioner contends that it was determined that the debt became worthless in 1952 and therefore it was proper to charge off the full amount of *129 the demand note, less $500, in 1952. The respondent argues that the transaction between petitioner and Smith concerning the demand note amounted to the sale of a capital asset at a loss within the purview of section 117, Internal Revenue Code of 1939. Section 23(k), Internal Revenue Code of 1939, permits a deduction for a debt ascertained to be worthless in the taxable year to the extent that it is charged off in the taxable year. Section 117, I.R.C. of 1939, provides that a loss on the sale or exchange of capital assets will be allowed only to the extent set out therein. The argument advanced by petitioner is that all of the facts and circumstances establish the partial worthlessness of the account in the year 1952, and therefore, petitioner had the right to treat it as a bad debt in that year. Petitioner characterizes the assignment of the note to Smith for $500 as a mere "windfall"; something that "was less burdensome than the costly procedure of instituting bankruptcy proceedings to establish the worthlessness of the account." Respondent argues the assignment transaction was a sale of capital asset which brings the transaction squarely within section 117, I.R.C. of 1939. *130 It may be true that petitioner could, with good reason, determine the account was worthless or partially worthless in 1952, but that fact alone does not result in the deduction. There must also be the charge-off made by petitioner at the time petitioner is the owner of the account. The situation here is almost identical with the situation in Maurice Levy, 46 B.T.A. 423, affd. 131 Fed. (2d) 544, certiorari denied 318 U.S. 780. There, as here, the taxpayer sold all of the outstanding stock in a corporation that was indebted to him for advancements and later assigned the debt to the purchaser of the stock for an amount less that the face value of the debt. The taxpayer took a deduction for a partial bad debt loss and claimed he ascertained the debt to be worthless in the taxable year. In holding the transaction was the sale or exchange of a capital asset within the purview of section 117, I.R.C. of 1939, the Court of Appeals said: "That the debt became partially worthless in 1937 is not disputed. It is also clear that the taxpayer literally complied with the language of the statute in that he actually made the charge-off within the taxable period *131 for which he claimed the deduction. The Tax Court held, however, that the fact of a previous sale of the debt had deprived him of the right to lay the basis for a deduction by charging off as the worthless part of a debt what in reality was the amount of a loss previously realized by a sale of the property. We agree." The only difference between the Levy case and this case is that in the Levy case the charge-off was not made until several months after the transaction while here it was made at the same time. But the charge-off was made after negotiations for the sale of the account and it cannot be said the charge-off was independent of the sale. See Mitchell v. Commissioner, 187 Fed. (2d) 706, where, in an opinion reversing 13 T.C. 368 and remanding the case for further hearing and evidence on another point, the Court said: "But the result is different if the taxpayer has arranged for the sale before he makes the charge-off; for then, in reality, he is charging off a debt he no longer owns. Obviously that was the case here, if the seeming sales were actual sales, since the charge-offs and the sales occurred the same day and, patently, pursuant to previous *132 negotiations. We would, therefore, sustain the Tax Court, were there no more to this case." This is not a case where there was a settlement made by the creditor with the debtor. Petitioner sold its note to a third party. The obligation of the note was not extinguished. The transaction as it was planned and carried out had, or could have had, economic significance in that the purchaser emerged with the same valid obligation of the debtor. We do not know the use the purchaser made of the note obligation but we do know it was still an outstanding obligation on the books of the debtor or its successor corporation as late as December 1954. Clearly the assignment to Smith was not a meaningless transaction. The consequences of casting the transaction in an assignment to Smith were quite different than they would be if the assignment had been made to the debtor. As we said in our opinion in the Levy case: "What actually is done rather than what might have been done usually determines the tax consequences." Petitioner elected to sell the note to a third party rather than pursue remedies that would have resulted in its extinguishment or surrender of the note to the debtor. It is not disputed *133 that the note would constitute a capital asset. Having disposed of a capital asset by sale or exchange the loss deduction must be limited by section 117, I.R.C. of 1939. Decision will be entered for the respondent.