**VON HOFFMANN CORPORATION,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

No. 15932.

United States Court of Appeals
Eighth Circuit.

April 16, 1958.

---

Robert P. Smith, Washington, D. C. (Robert V. Smith, Joseph W. Kiernan, D. A. Baker and Smith, Ristig & Smith, Washington, D. C., were with him on the brief), for petitioner.

Joseph Kovner, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C., were with him on the brief), for respondent.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

Taxpayer, Von Hoffmann Corporation, petitions this Court to review a decision of the Tax Court [1] determining that there was a deficiency in income tax from petitioner for the year 1952 in the amount of $16,823.17. The material facts, which were undisputed, are summarized as follows:

Petitioner is a Missouri Corporation engaged, through one wholly owned subsidiary, in the printing business. On June 29, 1950, it organized another wholly owned subsidiary, Von Hoffmann Systems Corporation (hereinafter referred to as Systems or debtor) to engage in the sale of business systems and printed forms for the automotive industry. Systems' total issued and outstanding stock of $10,000.00 was held by petitioner. Systems' business did not prosper as hoped and within a year petitioner had loaned Systems a total sum of $65,000.00. These loans were reduced to a single demand note for the face amount of the $65,000.00 prior to December, 1951. In December, 1951, petitioner realized that Systems was a failure, its inventory was defective and unsalable, and petitioner would be unable to collect the demand note. In that same month, one L. B. Smith, who owned various businesses, including several automotive distributorships along the eastern seaboard, became interested in Systems, thinking that he could profitably use the inventory. Smith purchased the stock of Systems from the taxpayer for $10,000, and took over its operation.

The petitioner, however, kept the promissory note, because, as its president testified, it retained some hope that, by reason of Smith's purchase, all or a substantial part of its account, totalling $65,000 might be repaid. But, after operating Systems for three months, Smith discovered that the inventory of Systems' forms was practically worthless and the business a failure. Smith thereupon, by letter dated February 29, 1952, offered to buy the demand note.

The letter was from L. B. Smith, individually and not as president or stockholder of Systems. Smith began by stating the situation of Systems; its inventory, he finds, is "unsaleable except for junk;" hence, it will not be possible

1. Unofficially reported: Von Hoffmann v. Commissioner, T. C. Memo. July 1, 1957-27.

to pay petitioner's account. While Smith is willing to continue the business "in a new line of activity" that will require additional new capital, he was unwilling to do so "with your [petitioner's] obligation outstanding." The account, Smith wrote, is consequently "substantially worthless" except for $500 that might be recovered in bankruptcy. Smith concluded his letter with an offer to accept an assignment of the account to himself for $500, the only alternative to Systems' bankruptcy or receivership.

After receipt of this offer on March 1, 1952, petitioner's president, W. D. Mc-Coy, from March 3 to 4, investigated Systems' current condition, relying on Systems' March balance sheet, and his knowledge of its prior condition. McCoy testified that the petitioner determined that the account was worthless and so decided that acceptance of Smith's offer of $500 was to its advantage, or as Mc-Coy put it, it was "the best thing we could do at the particular time". The note was thereafter endorsed by petitioner and turned over to Smith, in exchange for his personal check for $500. The $65,000 note was still due and outstanding on the books of Systems and its successor corporation as late as December 1954.

As a result of the above transaction, the petitioner claimed a bad debt deduction in the amount of $64,500 in 1952. The Commissioner disallowed this deduction and instead allowed a smaller deduction for a loss on the sale of a long-term capital asset, with a consequent deficiency due from petitioner.

The sole question before the Tax Court was whether petitioner was entitled to a deduction for a bad debt in 1952. Petitioner argued in that Court that since it was determined that the debt became worthless in 1952, it was proper to charge off the full amount of the demand note less $500 as a bad debt in 1952. Respondent contended that the transaction between petitioner and Smith concerning the demand note amounted to the sale of a capital asset at a loss within the purview of Section 117, Internal Revenue Code 1939, 26 U.S.C.A. § 117. The Tax Court determined that the transaction was a sale of a capital asset and resulted in a capital loss under Section 23(g) and 117 of the Internal Revenue Code 1939, 26 U.S.C.A. §§ 23(g), 117. The court stated in its memorandum:

"Section 23(k), Internal Revenue Code of 1939, permits a deduction for a bad debt ascertained to be worthless in the taxable year to the extent that it is charged off in the taxable year. Section 117, I.R.C. of 1939, provides that a loss on the sale or exchange of capital assets will be allowed only to the extent set out therein."

"The argument advanced by petitioner is that all of the facts and circumstances established the partial worthlessness of the account in the year 1952, and therefore, petitioner had the right to treat it as a bad debt in that year. Petitioner characterizes the assignment of the note to Smith for $500 as a mere 'windfall'; something that 'was less burdensome than the costly procedure of instituting bankruptcy proceedings to establish the worthlessness of the account'. * * * ."

"It may be true that petitioner could, with good reason, determine the account was worthless or partially worthless in 1952, but that fact alone does not result in the deduction. There must also be the charge-off made by petitioner at the time petitioner is the owner of the account. The situation here is almost identical with the situation in Levy v. Commissioner, 46 B.T.A. 423, affirmed [2 Cir.] 131 F.2d 544, certiorari denied 318 U.S. 780 [63 S.Ct. 858, 87 L.Ed. 1148]. There, as here, the taxpayer sold all of the outstanding stock in a corporation that was indebted to him for advancements and later assigned the debt to the purchaser of the stock for an amount less than the face value of the debt. The taxpayer took a deduction for a partial bad debt loss and claimed he

ascertained the debt to be worthless in the taxable year. In holding the transaction was the sale or exchange of a capital asset within the purview of section 117, I.R.C.1939, the Court of Appeals said:

" 'That the debt became partially worthless in 1937 is not disputed. It is also clear that the taxpayer literally complied with the language of the statute in that he actually made the charge-off within the taxable period for which he claimed the deduction. The Tax Court held, however, that the fact of a previous sale of the debt had deprived him of the right to lay the basis for a deduction by charging off as the worthless part of a debt what in reality was the amount of a loss previously realized by a sale of the property. We agree.'

"The only difference between the Levy case and this case is that in the Levy case the charge-off was not made until several months after the transaction while here it was made at the same time. But the charge-off was made after negotiations for the sale of the account and it cannot be said the charge-off was independent of the sale. See Mitchell v. Commissioner, [2 Cir.] 187 F.2d 706, where, in an opinion reversing 13 T.C. 368 and remanding the case for further hearing and evidence on another point, the Court said:

" 'But the result is different if the taxpayer has arranged for the sale before he makes the charge-off; for then, in reality, he is charging off a debt he no longer owns. Obviously that was the case here, if the seeming sales were actual sales, since the charge-offs and the sales occurred the same day and, patently, pursuant to previous negotiations. We would, therefore, sustain the Tax Court, were there no more to this case.' "

"This is not a case where there was a settlement made by the credi-tor with the debtor. Petitioner sold its note to a third party. The obligation of the note was not extinguished. The transaction as it was planned and carried out had, or could have had, economic significance in that the purchaser emerged with the same valid obligation of the debtor. We do not know the use the purchaser made of the note obligation but we do know it was still an outstanding obligation on the books of the debtor or its successor corporation as late as December, 1954. Clearly the assignment to Smith was not a meaningless transaction. The consequence of casting the transaction in an assignment to Smith were quite different than they would be if the assignment had been made to the debtor. What actually is done rather than what might have been done usually determines the tax consequences. Petitioner elected to sell the note to a third party rather than pursue remedies that would have resulted in its extinguishment or surrender of the note to the debtor. It is not disputed that the note would constitute a capital asset. Having disposed of a capital asset by sale or exchange the loss deduction must be limited by Section 117, I.R.C.1939."

On this review petitioner has sought to distinguish the case at bar from the cases of Levy v. Commissioner, supra, and Mitchell v. Commissioner, supra, which were decided by the Board of Tax Appeals and the Tax Court respectively, 46 B.T.A. 423, 13 T.C. 368, and reviewed by the Court of Appeals for the Second Circuit, 131 F.2d 544, 187 F.2d 706, and we are convinced that the principles announced and applied in those cases compel affirmance of the decision of the Tax Court in this case. We are in accord with those decisions and hold in accordance with them that the decision of the Tax Court should be and is in all respects affirmed.

Affirmed.