Mac Levine and Anne E. Levine, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 57760. Filed February 27, 1959.

*George B. Lourie, Esq.,* and *Arnold R. Cutler, Esq.,* for the petitioners.

*Frank V. Moran, Jr., Esq.,* for the respondent.

## OPINION.

OPPER, *Judge:* Respondent determined that petitioner's loss when he was required to make good on a guaranty was a "nonbusiness bad debt"—a result possible only if the primary debtor was unable to reimburse him. At the same time, respondent has determined that other debts owed to petitioner by the primary debtor did not become worthless during the taxable year.

Without regard to this apparent inconsistency, the record seems to us to show prima facie that all of the indebtedness became worthless early in the tax year, and that any burden of going forward was shifted to respondent. The business of the debtor was taken over at that time by a factoring concern which was the debtor's principal

secured creditor. Petitioner was informed by it that his interest was wiped out, but in order to confirm the information, his accountant examined the balance sheet and concluded that the secured and priority liabilities exceeded the assets. Thereupon petitioner instructed his bookkeeper to charge off the accounts.

It is true that the testimony of petitioner and his accountant is the source of these statements. See *Union Trust Co., Executor*, 9 B.T.A. 1374. But in the absence of impeachment or contradiction, their interest does not require complete rejection of their evidence. *Jay A. Williams*, 28 T.C. 1000; *Arthur N. Blum*, 11 T.C. 101, affd. (C.A. 3) 183 F. 2d 281.

Later in the same year petitioner received a token payment from a prospective purchaser of the debtor's business. This development lacks significance, because the payment then of a nominal nuisance value fails to negate the actual worthlessness of the claims, and if anything, in fact demonstrates it. See *De Loss* v. *Commissioner*, (C.A. 2) 28 F. 2d 803, affirming 6 B.T.A. 784, certiorari denied 279 U.S. 840. Subsequent events might give rise to offsetting income, or, which would be the same thing, cast doubt upon the correctness of the earlier chargeoff. See *Paterson* v. *United States*, (S.D. Ala.) 122 F. Supp. 770. But this is not that situation, nor is it such a case as *Maurice Levy*, 46 B.T.A. 423, affd. (C.A. 2) 131 F. 2d 544, certiorari denied 318 U.S. 780, where "there was, within the taxable year, before the actual chargeoff of the indebtedness, the sale of the account."

When a debt is "written off" it is not thereby disposed of. It remains an asset in the hands of the obligee. The precedents are replete with instances of subsequent recoveries on obligations previously treated as totally or partially worthless. E.g., *Citizens State Bank*, 46 B.T.A. 964. In such a situation the debt remains the property of its owner, its ultimate fate to remain open for future developments. If there is a total or partial recovery, this will constitute income, at least to the extent of any prior tax benefit. *Excelsior Printing Co.*, 16 B.T.A. 886. If it is sold, whether or not as a capital asset, the result is an income adjustment, with the item given a basis of zero or more, depending on the previous treatment. *Merchants National Bank of Mobile*, 14 T.C. 1375, affd. (C.A. 5) 199 F. 2d 657. Cf. *Conrad H. Hilton*, 13 T.C. 623. But except for *John F. B. Mitchell*, 13 T.C. 368, it has never been assumed that a subsequent sale or exchange destroys the effect of a previous writeoff on the ground that the holder no longer owns the asset at the year's end.

To be sure, if a debt is written off in whole or in part, subsequent developments in the same tax year may throw light on the correct-

ness of such action. In that case it is of little consequence whether we view the original writeoff as correct, subject to the adjustment, or as a single process to be treated as a year-end entry. This would be true whether a wholly worthless debt turned out to be partially collectible, or even presumably where a debt originally considered worthless only in part developed as entirely uncollectible. A sale might, of course, indicate the error of regarding a debt as totally worthless. But this would be merely evidentiary and not substantive.

We conclude that respondent erred in dignifying the later transfer for a nominal amount as the sale of a capital asset, at least to any extent beyond a zero basis; but that, on the contrary, the indebtedness had already become worthless and was properly treated as such.

A possible impediment to these conclusions is certain language contained in *John F. B. Mitchell, supra* at 372,[1] which was obviously unnecessary for the conclusion reached. In that case "the charge-offs and the sales occurred the same day and, patently, pursuant to previous negotiations," *Mitchell* v. *Commissioner*, (C.A. 2) 187 F. 2d 706, 707, the Court of Appeals saying: "We would, therefore, sustain the Tax Court, were there no more to this case." It had already, however, used the following language:

The Tax Court made this ruling: Where a taxpayer partially charges off a note and later in the same taxable year sells the note at a price equal to the reduced value remaining after the charge-off, the taxpayer may not deduct the amount of the charge-off under 26 U.S.C. § 23(k) but is entitled solely to a capital loss deduction on the sale. We do not agree with this blanket generalization. The situation is not the equivalent of a sale followed in the same year by a partial charge-off. For in such a case, after the sale, the taxpayer owns no debt which he can charge off, whereas, when the sale is the later event, there is no reason why the charge-off, if independent of the sale, should not be deductible. The fact that both transactions occur in the same year is irrelevant; the requirement of accounting for income tax purposes, on an annual basis is, we think, immaterial in this context.

But the result is different if the taxpayer has arranged for the sale before he makes the charge-off; for then, in reality, he is charging off a debt he no longer owns. * * *

The case was remanded for consideration of a contention not advanced below. The principles stated by the Court of Appeals have apparently since been accepted by the Tax Court. *Von Hoffman Corp.* v. *Commissioner*, (C.A. 8) 253 F. 2d 828, 831, affirming T.C. Memo. 1957–127. Since the *Mitchell* case is thus distinguishable on its facts, and the expression of the views of the Court of Appeals is contrary to the dictum to which we have referred, we regard the

---

[1] "True, the charge-offs were made earlier in the year, but their effectiveness for deduction purposes must be judged at the close of 1944, at which time they had lost their significance, due to the disposal of the obligations to which they were related."

conclusion now being reached as correct in its application to the present facts.

While a much closer question, we conclude also that the indebtedness, including the guaranty, was a business rather than a nonbusiness bad debt. Petitioner, being a sole proprietor, does not run afoul of such cases as *Burnet* v. *Clark*, 287 U.S. 410; *Charles G. Berwind*, 20 T.C. 808, affirmed per curiam (C.A. 3) 211 F. 2d 575, that a business is not that of the taxpayer but of a separate corporation. Factual patterns are always different but we think the present circumstances are sufficiently similar to *Estate of Lawrence M. Weil*, 29 T.C. 366; *J. T. Dorminey*, 26 T.C. 940, to require the same result. Here again the facts are based on petitioner's testimony which respondent characterizes as "biased and uncorroborated," but we are not prepared to disregard it entirely as we would have to do to reach respondent's result. Because of uncontested items,

*Decision will be entered under Rule 50.*

Reviewed by the Court.