SIMON A. HASKEL AND BARBARA A. HASKEL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Haskel v. Commissioner
Docket No. 1846-78.
United States Tax Court
T.C. Memo 1980-243; 1980 Tax Ct. Memo LEXIS 342; 40 T.C.M. (CCH) 615; T.C.M. (RIA) 80243; July 9, 1980, Filed *342 Petitioners invested in a corporation. Shortly thereafter they sold their stock in the corporation to the other shareholder in exchange for notes. Subsequently the purchaser of the stock sued petitioners and they counter-sued for nonpayment of the notes. A settlement was reached in 1974 whereby petitioners received $5,000 in full discharge of the notes in which they had a remaining basis of $35,000. Held: Petitioners suffered a $30,000 nonbusiness bad debt loss in 1974. Michael P. Feltman, for the petitioners. Alyce C. Halchak, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND *344 OPINION STERRETT, Judge: By letter dated November 25, 1977, respondent determined a deficiency in income tax due from petitioners in the amount of $11,254.02 for their taxable year ended December 31, 1974. The issues for our determination are: (1) whether petitioners suffered a loss due to the worthlessness of notes or stock, (2) if stock, whether the stock was section 1244 stock, and (3) the year of worthlessness. While respondent adjusted petitioners' claimed medical expense deduction, no claim with respect to this adjustment was made by petitioners in their petition. Further, petitioners failed to argue the adjustment at the trial herein or on brief. We, therefore, conclude that this adjustment has been conceded. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Simon A. and Barbara A. Haskel, husband and wife, timely filed a joint Federal income tax return for their taxable year ended December 31, 1974 with the Internal revenue Service. Petitioners resided at Cliffside Park, New Jersey at the time they filed their petition herein. *345 Petitioner Simon A. Haskel is sometimes referred to herein as "petitioner." On December 27, 1967 Paterson Bonding & Laminating Corp. (Paterson) was incorporated under the laws of New Jersey. Upon Paterson's incorporation petitioner purchased 50 shares of stock, representing a 50 percent ownership of the corporation, in exchange for $50,000. Petitioner's shares were issued to Barbara Cohen, who was and is in fact petitioner's wife and whose full name is Barbara A. Cohen Haskel. Petitioner's wife held these shares for her husband and acted in all respects as his representative and pursuant to his instructions in the exercise of her rights as nominal shareholder of the corporation. The other 50 percent of Paterson's stock was held by John T. Sessa. Within a short time after Paterson's incorporation petitioner and Mr. Sessa had a falling out. On August 1, 1968 Mr. Sessa and petitioner entered into an agreement for the purchase by Mr. Sessa of petitioner's shares in Paterson which were still held in the name of petitioner's wife. This agreement provided in relevant part as follows: 1. BARBARA COHEN by these presents hereby grants, conveys and sells to JOHN T. SESSA all her *346 right, title and interest to her FIFTY (50%) PER CENT of the stock of said corporation effective as of the date of the signing of this Agreement. To accomplish this, she hereby agrees to deliver all certificates of stock in said corporation owned by her, endorsed and transferred to JOHN T. SESSA. 2. JOHN T. SESSA hereby agrees to pay to BARBARA COHEN the sum of FIFTY THOUSAND ($50,000.00) DOLLARS payable [in installments] * * *.The said payments are to be evidenced by a series of promissory notes * * *. The said notes to be made payable to BARBARA COHEN. * * * 2A. THE STOCK CERTIFICATE held by BARBARA COHEN as evidence of her FIFTY (50%) PER CENT interest in PATERSON BONDING AND LAMINATING CORPORATION shall be delivered * * * in escrow as collateral security for the payment of the aforementioned notes and the performance by JOHN T. SESSA of the terms of this agreement. * * *
3. BARBARA COHEN hereby releases any right, title and interest she may have of any nature in and to the corporation known as PATERSON BONDING AND LAMINATING CORPORATION, and any of its title and assets. In furtherance of this purpose, she will execute any and all required documents including, *347 but not limited to, resignations as a director and officer of the corporation. Pursuant to the term sof this agreement the consideration of $50,000 was payable in seven installments evidenced by seven promissory notes which were delivered to petitioner upon execution of the agreement. The notes received by petitioner called for the following payments on the following dates: November 12, 1968
$15,000
December 12, 1968
4,000
January 12, 1969
4,000
February 12, 1969
4,000
March 12, 1969
4,000
April 12, 1969
4,000
May 12, 1969
15,000
Petitioner received payment on the first note on schedule in the amount of $15,000. Also, the stock certificate representing petitioner's interest in Paterson was delivered and held in escrow as collateral security for payment by Mr. Sessa of the notes he had given. Prior to the August 1, 1968 sale date petitioner, through his wife, had exercised full voting rights in Paterson. After the sale he exercised no such rights. Prior to the sale petitioner, through his wife, had been advised of and had attended Paterson shareholder meetings. After the sale he was neither advised of, nor attended, any such meetings. Prior *348 to the sale date petitioner Barbara Haskel nee Cohen had been both an officer of the corporation and a member of the corporate board of directors. After the sale she held neither of these positions. Indeed, after the sale all petitioners' contact with Paterson terminated. Petitioners had no knowledge of Paterson's operations, except what they gleaned from third-party sources in the industry, and were not even welcomed on the company's grounds. Further, petitioner had no authority over Paterson's employees. In 1969 Mr. Sessa instituted a proceeding against petitioner. Petitioner counterclaimed in this proceeding for nonpayment of the notes. Petitioner had not received any payments after the $15,000 with respect to the first note. Mr. Sessa's suit culminated in the execution, in October 1974, of a release of Sessa from the sales agreement, i.e. from his obligation under his notes. This general release was signed by Barbara Haskel nee Cohen in exchange for the payment by Mr. Sessa to petitioner of $5,000. Paterson began to fail almost as soon as it was begun. It suffered losses throughout its existence. The corporate return filed by Paterson for its taxable year ended December 31, 1970 showed *349 that all the corporation's machinery and equipment had been seized by a creditor in May of that year. Paterson's returns for its taxable years 1972 and 1973 reflected a complete absence of inventory in the corporation. On the corporation's 1968 return "buildings and other fixed depreciable assets" were valued at $227,279.76. Beginning with the second half of the taxable year 1970 these assets were no longer reflected on the corporation's balance sheet. Paterson's 1973 income tax return, the last it filed, reflected no gross receipts, assets of $55,394.41 and liabilities of $386,797.59. The assets consisted of $300.99 in cash and $54,793.42 in accounts receivable and $300.00 in intangibles. The liabilities consisted of accounts payable of $132,457.58, mortgages and notes of $220,319.27, and loans from stockholders of $34,020.74. OPINION Petitioners have claimed an ordinary deduction of $31,000 based upon (1) the worthlessness of their 50 percent stock interest in Paterson, and (2) their claim that this stock was section 1244 stock. Respondent argues, on the other hand, that petitioners sold the stock to Mr. Sessa prior to its worthlessness and that, therefore, if petitioners *350 suffered any loss it was a loss on the worthlessness of Mr. Sessa's notes, and that in any event petitioners have failed to show that the stock was section 1244 stock and that it was worthless in 1974. First we note that respondent's notice of deficiency denied petitioners' claimed $31,000 section 1244 ordinary loss on the failure of Paterson only on the basis that the stock "does not qualify as Internal Revenue Code Section 1244 stock. Nor have you established the amount or the year of the loss." Only these issues were reflected in the pleadings. Both parties tried the case, however, as if it involved the additional issue of whether petitioners suffered a stock loss at all as opposed to a loss on the worthlessness of Mr. Sessa's notes. While the pleadings have not been amended, the additional issue was tried by mutual assent. It is, therefore, properly before us.
Turning now to the merits we must first address respondent's claim that the August 1, 1968 transaction was a completed sale vesting ownership of the stock in Mr. Sessa and leaving petitioners owning his notes. The question of when a sale is complete for tax purposes is one of fact which must *351 be resolved by an examination of all the facts and circumstances of the case, no single one of which is controlling. Baird v. Commissioner,68 T.C. 115, 124 (1977). The test is one of practicality. Clodfelter v. Commissioner,426 F.2d 1391, 1393 (9th Cir. 1970), affg. 48 T.C. 694 (1967), Commissioner v. Segall,114 F.2d 706, 709 (6th Cir. 1940), revg. 38 B.T.A. 43 (1938), Deyoe v. Commissioner,66 T.C. 904, 910 (1976). In deciding such a question the focus is on when the benefits and burdens of ownership have shifted. Baird v. Commissioner,supra,Pacific Coast Music Jobbers, Inc. v. Commissioner,55 T.C. 866, 874 (1971). We are satisfied that the facts before us reveal a current sale of the stock on August 1, 1968. By the sale agreement petitioners transferred all their right, title and interest in the stock to Mr. Sessa in exchange for his notes. Whereas prior to the sale petitioner, through his wife, had functioned as a full one-half partner in the business, after the sale neither petitioner nor his wife exercised any dominion or control over *352 the corporation. After the sale petitioners neither voted at nor even received notice of shareholder meetings. After the sale neither petitioner nor his wife had access to the corporate books. While prior to the sale Barbara Haskel nee Cohen had served both on the board of directors and as an officer of the corporation, after the sale she resigned both posts. Thus, after the sale, petitioners' only interest in the stock was as security for the payment of the notes they had received in exchange for the stock. In our view, therefore, the stock was held in escrow as security for Mr. Sessa's performance of his obligations under the notes. Clearly, such a security arrangement cannot diminish the fact of sale. Pacific Coast Music Jobbers, Inc. v. Commissioner,supra at 875. We conclude that petitioners held notes, not stock, after 1968. Thus, petitioners held only Mr. Sessa's notes in 1974 when they exchanged these notes, thereby releasing Mr. Sessa from any further claims under the sales contract, for $5,000. Because petitioners held notes and not stock in 1974 they cannot claim a loss on worthless stock. So also is section 1244 irrelevant. Thus we must *353 next decide whether or not Mr. Sessa's notes became worthless and, if so, their character as business or nonbusiness bad debts, and their taxable year of worthlessness. Section 166 allows a deduction for any business bad debt which becomes wholly or partially worthless during the taxable year. Nonbusiness bad debts are deductible only if totally worthless. Section 166(d)(1)(A), Rollins v. Commissioner,276 F.2d 368, 372 (4th Cir. 1960). While business bad debts are fully deductible, nonbusiness bad debts are treated as short-term capital losses subject to the capital loss limitations of sections 1211 and 1212. The distinction drawn in section 166 between business and nonbusiness bad debts is, perhaps, unfortunate in that it requires the courts to categorize taxpayers' actions in a way not required by other deduction sections which permit similar treatment for business and nonbusiness but profit seeking activities. See e.g. sections 162, 212, 165(c)(1) and (2), 167(a)(1) and (2) (see also the effect of these sections on adjusted gross income); but see sections 1221, 172(d)(4), 163(d). Nonetheless we believe the answer clear on the facts before us. Petitioners' *354 investment in Paterson stock was not of itself a business. Further, regardless of what acts petitioners may or may not have performed for or with Paterson while shareholders, the notes they took from Mr. Sessa with respect to their divestiture of their Paterson stock were clearly not notes acquired in connection with a trade or business within the meaning of section 166(d)(2). Towers v. Commissioner,247 F.2d 233, 236 (2d Cir. 1957), affg. in part 24 T.C. 199, 234 (1955). Mere investment is not a trade or business. Whipple v. Commissioner,373 U.S. 193, 203 (1963). Certainly there is no indication in the record that petitioners' loss from the worthlessness of Mr. Sessa's notes was incurred in a trade or business, or was created or required in the course of a trade or business. See e.g. Lundgren v. Commissioner,376 F.2d 623, 625, 629 (9th Cir. 1967), Rollins v. Commissioner,supra at 370. We conclude that the debts before us were nonbusiness bad debts. See in general Max Putnam v. Commissioner,352 U.S. 82, 87-91 (1956). The next question we must address is whether this nonbusiness *355 bad debt became wholly worthless and, if so in which taxable year. We think it obvious that when petitioners agreed to accept $5,000 in discharge of notes in which they had a $35,000 basis, an event occurred which identified the worthlessness of these notes to the extent of $30,000. [1]
This is not a case where all the notes were sold to a third party. Rather, here we have a settlement between a creditor and debtor. By this settlement Mr. Sessa's debt was extinguished, thereby rendered worthless in petitioners' hands to the extent it exceeded amounts received. Accord. Von Hoffmann Corp. v. Commissioner,253 F.2d 828, 831 (8th Cir. 1958), affg. a Memorandum Opinion of this Court, Levy v. Commissioner,131 F.2d 544, 545 (2d Cir. 1942), affg. 46 B.T.A. 423. We conclude that petitioners are entitled to a $30,000 short-term capital loss in 1974. As mentioned, our disposition of the case on this basis obviates the necessity to address petitioners' section 1244 claim. *356 It also obviates the need to pass again on petitioners' motion, overruled at the trial and renewed by petitioners on brief, to strike the testimony of Isadore Berlin, who testified on the section 1244 issue. While not deciding the issue we feel compelled to note, however, that no credible evidence of a section 1244 plan was shown. Indeed what evidence was adduced at trial indicated clearly that no such plan ever existed. [2]
Decision will be entered under Rule 155.
Footnotes
1. No evidence was adduced with respect to the value, if any, of the claims which petitioners and Mr. Sessa may have had against one another and we hazard none.↩
2. For stock to be qualified under sec. 1244 it must be issued pursuant to a plan. Sec. 1244(c)↩. No plan was produced nor included in the record. No evidence which would indicate such a plan's existence was adduced other than the testimony of petitioner at the trial held herein. This testimony was, however, contradicted by the testimony of more disinterested parties.