## McCLAIN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9370.

Circuit Court of Appeals, Fifth Circuit.
March 23, 1940.

Writ of Certiorari Granted May 20, 1940.

See 60 S.Ct. 1079, 84 L.Ed. ——.

M. E. Kilpatrick, of Atlanta, Ga., for petitioner.

F. E. Youngman, Sewall Key, and Newton K. Fox, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and John M. Morawski, Sp. Atty. Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

Having owned for seven years $15,000 par value of Cameron County Water Improvement District coupon bonds, in 1935 the taxpayer accepted from the District for them $7,476.75, and in his tax return claimed a deduction of $7,523.25 as for a bad debt charged off. The Board of Tax Appeals upheld the Commissioner in his ruling that the loss was not a bad debt under Sect. 23(k) of the Revenue Act of 1934, 26 U.S.C.A.Int.Rev.Acts, but fell under a new provision, Sect. 117(f) of that Act, whereby the loss on the bonds was to be treated as a capital loss. This is the sole question here.

Section 117 deals with capital gains and losses, which are "recognized upon the sale or exchange of a capital asset." Prior to 1934, a corporate bond note or other evidence of debt, when it proved bad in whole or in part, could be charged off as a bad debt. Only if sold or exchanged could it be treated as a capital asset. Sect. 117(f), put into the Revenue Act of 1934, reads thus: "For the purposes of this title, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor." 26 U.S.C.A. Int.Rev.Acts, § 117(f). The corporate paper described as registered or bearing coupons is intended for long time investment. The effect of the provision is to make the retirement of it by the maker equivalent for tax purposes to a sale of it to another, and the necessary consequence is that it falls under the capital assets provisions of Sect. 117(a) and (d), and if it has been held more than a year a loss cannot be taken into account at 100 percent, and the limitation of capital net losses to $2,000 will apply. Such was the treatment given this loss.

Whether it is correct depends on the meaning of the word "retirement". The Century Dictionary defines "retire" as "to recover, redeem, regain by the payment of a sum of money", and this definition was given judicial approval as applied to a note in Empire Security Co. v. Berry, 211 Ill.App. 278. Webster's International Dictionary gives, among other meanings, "to withdraw from circulation, or from the market; to take up and pay, as to retire bonds, to retire a note." The agreed facts about these coupon bonds are these: The District had sought municipal bankruptcy in vain. See Ashton v. Cameron County Water Improvement District, 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309. It could not collect its taxes and was in default on both principal and interest of its bonds. In order to readjust its indebtedness it applied for a loan to Reconstruction Finance Corporation, which would agree to lend only enough to pay 49.9 percent of the principal of the bonds. To obtain that all the bondholders were required to deposit their bonds with a committee with authority "to receive all monies payable to the holders of old securities deposited with it, to surrender deposited securities, and do all other acts necessary to enable the District to effect a reduction in its indebtedness to the extent and in the manner contemplated by this resolution." The bonds of the taxpayer were forwarded to a bank in Texas and on receipt of 49.9 percent were delivered to the agent of the District to be cancelled. It was understood by the taxpayer and all other bondholders in so surrendering their bonds that the 49.9 percent received was final, though there was no writing to evidence such agreement between the District and bondholders. We hold that the deposit of the bonds for surrender and their surrender for cancellation on payment by the District of the agreed sum was a retirement of them. If there had been simply a payment of 49.9 percent on the bonds, they being still held as an obligation good or bad, it would be otherwise. No writing of release was necessary. The surrender and cancellation of the bonds withdrew them from circulation forever, and retired them. What was received must under the statute be treated as the proceeds of a sale of the bonds. There was no bad debt left to be charged off. The loss on account of the bonds was correctly considered a capital loss.

Affirmed.