BENEDUM v. GRANGER, Collector of Internal Revenue (two cases).

Nos. 10011, 10012.

United States Court of Appeals Third Circuit.

Argued Dec. 20, 1949.

Decided Feb. 14, 1950.

As Amended March 14, 1950.

---

Morton K. Rothschild, Washington, D. C. (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, A. F. Prescott, Special Assistants to the Attorney General, Owen M. Burns, United States Attorney, Elliott W. Finkel, Assistant United States Attorney, Pittsburgh, Pa., on the brief), for appellant.

William Alvah Stewart, Pittsburgh, Pa. (C. L. Wallace, Henry A. Bergstrom, Weller, Wicks & Wallace, Pittsburgh, Pa., on the brief), for appellees.

Before GOODRICH and HASTIE, Circuit Judges and GRIM, District Judge.

HASTIE, Circuit Judge.

Plaintiffs, M. L. and Sarah N. Benedum, sought and obtained separate judgments in the District Court for sums claimed as refunds of overpayments of income taxes.[1]

The items in controversy are certain losses shown in the Benedums' 1936 income tax returns. The Benedums have at all times claimed that these losses may lawfully be set up as bad debts deductible in full from gross income. The defendant, the Collector of Internal Revenue, insists that the losses in question fall exclusively in the category of capital losses for which only limited deductions are allowable.

The two cases have been consolidated on appeal and will be considered together.

The Benedums, husband and wife, had various claims against a corporation which was reorganized in 1936 under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. First, Mr. Benedum had a claim arising out of his payment as indorser of the note of the old company, as it existed before reorganization. This claim will be designated as the "unsecured claim". Second, Mr. and Mrs. Benedum each owned first mort-

1. Benedum v. Granger, D.C.W.D.Pa.1949, 82 F.Supp. 135.

gage bonds of the old company. Third, Mr. Benedum held a promissory note of the old company secured by its mortgage bonds. He had taken title to these bonds in 1935 because of default in payment of the note.

In exchange for these claims and in accordance with the plan of reorganization, the Benedums received stock of the new company, organized to take over the assets of the old. Their claims against the old company were extinguished in the process.

The taxpayers' bases for their several claims against the old company were substantially greater than the fair market value of the securities of the new company received in exchange. These differences constitute the losses which they set up as bad debt deductions, but which the Commissioner argues are allowable only as losses from exchanges of capital assets.

We proceed to examine the several items of loss in relation to the applicable statutes.

■ I. Mr. Benedum's claim to a bad debt deduction for his loss on his unsecured claim against the old company is based on Section 23(k) of the Revenue Act of 1936 which permits the deduction from gross income of debts determined to be worthless or partially worthless within the taxable year, and so charged off, provided the Commissioner is satisfied of the alleged worthlessness.[2] But in order to obtain a bad debt deduction a taxpayer must have remained the obligee, holding the original asset. Stoddard v. Commissioner, 2 Cir., 1944, 141 F.2d 76; Reed v. Commissioner,

4 Cir., 1942, 129 F.2d 908; Levy v. Commissioner, 2 Cir., 1942, 131 F.2d 544, certiorari denied, sub. nom. Levy v. Helvering, 1943, 318 U.S. 780, 63 S.Ct. 858, 87 L.Ed. 1148; 27 Minn.L.Rev. 477 (1943). Here, the claim was surrendered and extinguished.

■ On the other hand, the present transaction falls plainly within Section 23 (j) of the Act which permits limited deductions for "losses from sales or exchanges of capital assets".[3] Under Section 117(b) of the Act " 'Capital assets' means property held by the taxpayer".[4] Mr. Benedum having held "property",[5] a chose in action, exchanged it for other less valuable property. The transaction clearly constitutes an exchange of capital assets under the language of the Act. It may be as the taxpayer urges that in logic the transaction can be analyzed in part as involving the disposition of a partially worthless debt. But we find no warrant for resort to such an analysis as an escape from the plain language of the statute where the business sense of the transaction is an exchange of property. The Commissioner's disposition of this item was correct.

II. The tax effect of the exchange by each taxpayer of his mortgage bonds of the old company for stock of the new company is controlled by Section 112(l), added by the Revenue Act of 1943,[6] which provides:

"(l) Exchanges by security holders in connection with certain corporate reorganizations.

---

2. "In computing net income there shall be allowed as deductions: * * *
   "(k) Bad Debts. Debts ascertained to be worthless * * * (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction." Revenue Act of 1936, § 23(k), 49 Stat. 1660 (1936), 26 U.S.C.A.Int.Rev.Acts, page 828.

3. "In computing net income there shall be allowed as deductions: * * *
   "(j) Capital Losses. Losses from the

sales or exchanges of capital assets shall be allowed only to the extent provided in section 117(d)." Revenue Act of 1936 § 23(j), 49 Stat. 1660 (1936), 26 U.S.C. A.Int.Rev.Acts, p. 828.
   Mr. Benedum could claim no benefit under this section because other transactions had exhausted his allowable 1936 capital loss deductions.

4. Revenue Act of 1936, § 117(b), 49 Stat. 1691 (1936), 26 U.S.C.A.Int.Rev.Acts, p. 874.

5. See Paul, Studies in Federal Taxation (1937) 253–255.

6. Revenue Act of 1943, § 121(b), 58 Stat. 42 (1944), 26 U.S.C.A. § 112(l).

"(1) General Rule. No gain or loss shall be recognized upon an exchange consisting of the relinquishment or extinguishment of stock or securities in a corporation the plan of reorganization of which is approved by the court in a proceeding described in subsection (b) (10), [7] in consideration of the acquisition solely of stock or securities in a corporation organized or made use of to effectuate such plan of reorganization.

"(2) Exchange occurring in taxable years beginning prior to January 1, 1943. If the exchange occurred in a taxable year of the person acquiring such stock or securities beginning prior to January 1, 1943, then, under regulations prescribed by the Commissioner with the approval of the Secretary, gain or loss shall be recognized or not recognized— * * * (B) * * * to the extent that it would be recognized or not recognized under the latest treatment of such exchange by such person prior to December 15, 1943, in connection with his tax liability for such taxable year."

The taxpayers argue that this language sanctions their treatment of the exchange of securities in the 77B reorganization as giving rise to a bad debt deduction even though such treatment would otherwise be precluded by Section 23(j).

We do not agree with taxpayers' construction of the statute which would by implication, both strained and unnecessary, confer upon the taxpayer the extraordinary power of making his own law of deductions.

The 1943 amendment, in terms, is concerned only with recognition of gains and losses. On its face it does not purport to deal with the extent to which deductions are allowable, once a loss is recognized. And the pattern of the code makes it extremely improbable that any implication concerning deductions was intended. Sections 23(k) and 23(j) of the 1936 Act, dealing respectively with bad debts and capital losses, do not cover the same types of transactions. The two sections are mutually exclusive in the sense that one transaction cannot give rise both to a bad debt deduction and a capital loss deduction. Levy v. Commissioner, supra; cf. Spring City Foundry Co. v. Commissioner, 1934, 292 U.S. 182, 189, 54 S.Ct. 644, 78 L.Ed. 1200; but cf. Bunker Hill v. Commissioner, 1943, 1 T.C. 1057. Section 112, to which the subsection under dispute is an amendment, is in terms related only to the capital loss category. It provides for circumstances where capital assets have been sold or exchanged, and where question arises whether there should be any present tax consequences. Revenue Act of 1936, Sec. 112, 49 Stat. 1678 (1936), 26 U.S.C.A.Int. Rev.Acts, page 855.

Section 112(l), the amendment here involved, provides, prospectively that no gain or loss shall be recognized upon an exchange incident to a 77B reorganization. The further provision concerning exchanges which occurred before 1943 means that if the taxpayer has treated a transaction as one giving rise to a capital gain or loss, his treatment will not now be disturbed, although in the future such exchanges will be tax free.

We find nothing in the Treasury Regulations, concerning the recognition of "the entire amount of * * * loss", if the taxpayer formally maintained that he was entitled to it,[8] either requiring or suggest-

---

7. This subsection includes reorganizations under § 77B of the Bankruptcy Act.

8. U.S.Treas.Reg. 111, Sec. 29.122(1)-2(b) provides that where there has been an exchange of stock or securities in a 77B reorganization in a taxable year beginning prior to January 1, 1943, and the tax for such taxable year not finally determined prior to May 24, 1944, "the recognition or nonrecognition of gain or loss shall depend upon the position last maintained by the taxpayer, prior to December 15, 1943, relative to the character of such exchange as one in which the entire amount of gain or loss is recognized or one in which all or a part of the gain or loss is not recognized. * * * If the taxpayer formally maintained that such exchange constituted a transaction upon which the entire amount of gain or loss is recognized, then gain or loss, in the amount realized on such exchange, shall be recognized. If the taxpayer formally maintained that such exchange consti-

ing a contrary result. There too, the framework of all of the language used is the "recognition or non-recognition of gain or loss". There is no indication that the quantitative limitations imposed by Section 117(d) on allowable deductions for losses recognized in their entirety are not applicable. Cf. Stoddard v. Commissioner, 2 Cir., 1945, 152 F.2d 445, 446.

The taxpayers refer us, finally, to the legislative history of Section 112(*l*) (2) (B). They call our attention to language that the amendment was "designed to cover the reorganization transactions of certain insolvent corporations * * * and to resolve some of the doubts and uncertainties which result from existing law as construed in the Supreme Court decisions". Sen.Rep. No. 627, 78th Cong., 1st.Sess. 49-53 (1944); H.R.Rep. No. 1074, 78th Cong., 1st.Sess. 45-49 (1944). The suggestion is made that this confusion stemmed from the difficulty of determining whether a bad debt or capital loss deduction was proper and, therefore, that the taxpayer's authorized "treatment" of a transaction contemplates an unrestricted choice between these alternatives.

But an examination of the Senate and Conference Reports shows that the "confusion" the amendment was enacted to allay was whether for income tax purposes 77B reorganizations did or did not give rise to capital gains and losses. See Sen.Rep. No. 627, supra; H.R.No. 1074, supra. The Senate Report refers to Helvering v. Alabama Asphaltic Limestone Co., 1942, 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. 775; Palm Springs Holding Corporation v. Commissioner, 1942, 315 U.S. 185, 62 S.Ct. 544, 86 L.Ed. 785, and Helvering v. Cement Investors, Inc., 1942, 316 U.S. 527, 62 S.Ct. 1125, 86 L.Ed. 1649. All of these cases, so far as now relevant, concern the question whether 77B reorganizations are tax free, either for the purpose of determining the

basis of assets in a new corporation which came to it from the old, or for the purpose of determining whether any gain or loss was recognizable to the security holders. None of them involves a claim that an admitted loss on the exchange of securities in connection with the reorganization gave rise to a bad debt deduction.

It is true that McClain v. Commissioner, 1941, 311 U.S. 527, 61 S.Ct. 373, 85 L.Ed. 319, cited to us by the plaintiffs, involves the question whether the acceptance by the taxpayer of a token sum from a corporation in receivership for the surrender of its bonds held by him gave rise to a bad debt deduction or to a capital loss deduction.[9] However, in relation to the contention that Section 112(*l*) (2) (B) was intended to permit the present taxpayer to take a bad debt deduction, the failure of the committee reports to cite the McClain case permits some inference that the problem of that case was not in legislative contemplation.

The "confusion" to which attention was directed was whether 77B reorganizations were tax free. Neither the language of 112(*l*) (2) (B) nor its history points to any other issue.

■ The Benedums were not entitled to bad debt deductions on their exchanges of securities.

III. Because of the views we have expressed above, it is not necessary to pass upon Mr. Benedum's argument that the exchange of the bonds acquired by him as pledgee does not constitute an exchange of "stock or securities" within the meaning of Section 112(*l*). If the transaction were in essence an exchange of "stock or securities" the result must be the same as it is with respect to the other bonds held by the plaintiffs. If it were not, our holding with respect to Benedum's unsecured claim is controlling.

---

tuted a transaction upon which all or a part of the gain or loss is not recognized, then gain or loss shall not be recognized. * * *" The taxpayers argue that the "entire amount" could not be relevant unless the bad debt deductions were permissible.

9. The Court held that the transaction constituted a "retirement" of the bonds within § 117(f) of the Act, and that it was therefore subject to the limitations of § 117(d).

Mr. Benedum has exhausted his allowable capital loss deduction but Mrs. Benedum has not. The Commissioner has agreed to treat Mrs. Benedum's claim to a deduction for a bad debt as a sufficient claim for recognition. Therefore, the judgment in case No. 10,011 will be reversed and the cause remanded to the district court for the entry of judgment in accordance with such recognition. The judgment in case No.10,012 will be reversed.