*Decision will be entered under Rule 50.*

IRA HANDELMAN, TRANSFEREE, ET AL.,* PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 74723, 74724, 74726. Filed June 26, 1961.

*Adolph L. Haas, Esq.,* for the petitioners.
*Joel Yonover, Esq.,* for the respondent.

ATKINS, *Judge:* The respondent determined liabilities against the petitioners Ira Handelman and Ida Handelman as transferees of the assets of Employees Finance Corporation (hereinafter referred to as the corporation or as the transferor), and against Harry Freeman as transferee and fiduciary or liquidating agent of the assets of the transferor, for an income tax deficiency of $40,828.97 determined

*Proceedings of the following petitioners are consolidated herewith: Ida Handelman, Transferee, Docket No. 74724; and Harry Freeman, Transferee and Fiduciary or Liquidating Agent, Docket No. 74726.

against the transferor for its taxable year ended January 31, 1955, as follows:

| Petitioner | Docket No. | Transferee liability |
|---|---|---|
| Ira Handelman | 74723 | $40,828.97 |
| Ida Handelman | 74724 | 40,828.97 |
| Harry Freeman | 74726 | 19,519.21 |

The issues are (1) whether the respondent properly disallowed a deduction claimed by the transferor for an addition to its reserve for bad debts for the taxable year ended January 31, 1955; (2) whether the amount of bad debt reserve remaining after the transferor sold all its notes and contracts pursuant to a plan of liquidation qualifying under section 337 of the Internal Revenue Code of 1954, should be included as ordinary income; and (3) whether the amount received from the sale of notes and contracts of the transferor, which had been previously charged off against the reserve for bad debts, is taxable as ordinary income. The petitioners do not question the respondent's determination that they are liable as transferees, if there is a deficiency in tax due from the transferor.

FINDINGS OF FACT.

The facts are stipulated and the stipulation is incorporated herein by this reference.

The transferor was a corporation organized under the laws of the State of Illinois on August 2, 1948. It was engaged in the business of purchasing, financing, and collection of commercial paper and had its principal office in Chicago, Illinois. It kept its books and filed its returns on the basis of a fiscal year ended January 31, and employed an accrual method of accounting. It used the reserve method for the treatment of bad debts. It filed its income tax return for the taxable year ended January 31, 1955, with the district director of internal revenue, Chicago, Illinois.

The petitioners were shareholders of the corporation and held its stock as follows:

| | Shares | Percentage of total stock outstanding |
|---|---|---|
| Ira Handelman | 856 | 34.56 |
| Ida Handelman | 202 | 8.16 |
| Harry Freeman | 26 | 1.05 |

On September 3, 1954, the shareholders of the corporation adopted and approved a plan of liquidation calling for the liquidation of all

assets, payment of all liabilities, and distribution of assets to the shareholders not later than August 31, 1955.

Pursuant to the plan of liquidation the corporation, by contract dated October 6, 1954, sold all its notes and contracts for a total cash consideration of $1,254,773.92 to Western Tire Auto Stores, Inc. The notes and contracts sold had a face value of $1,400,345.07, and an adjusted basis of $1,179,753.65. The contract between the corporation and Western Tire Auto Stores, Inc., provided in part:

WHEREAS, for the past number of years, EMPLOYEES has been purchasing from WESTERN all accounts arising from * * * time payment sales of merchandise in WESTERN'S stores evidenced and secured by conditional sales contracts, chattel mortgages, promissory notes and wage assignments, hereinafter referred to as related documents; and

WHEREAS, WESTERN has agreed to purchase back from EMPLOYEES, and EMPLOYEES has agreed to sell to WESTERN, all of said accounts and related documents, with certain exceptions, upon which there is a balance due.

NOW, THEREFORE, in consideration of the promises, covenants, terms and conditions herein contained, the parties hereto Do MUTUALLY AGREE as follows:

1. EMPLOYEES shall sell to WESTERN, and WESTERN shall purchase from EMPLOYEES, all of the accounts originating in WESTERN'S stores which are listed in the schedule of accounts hereto attached, and the related documents.

2. The purchase price for said accounts shall be the total balance owing thereon, less five (5%) per cent, as an allowance for uncollectible accounts,[1] and then there shall be deducted as a discount an amount equal to six (6%) per cent on the balance remaining after said five (5%) per cent allowance. * * *

3. Payment shall be in cash upon assignment of the accounts and delivery of the related documents.

*       *       *       *       *       *       *

7. The purchase price of all accounts sold hereunder shall be determined from the balances owing as of the close of the day, September 26, 1954, and the title to said accounts and related documents shall pass to WESTERN as of said time; thereafter, all moneys which may be collected thereon shall be the property of WESTERN. Assignment of the accounts and delivery of the related documents, and payment therefor, shall be made as soon as conveniently may be.

In addition to the above cash consideration of $1,254,773.92 received by the corporation for notes and contracts, it also received the sum of $8,000 upon the sale, also pursuant to the plan of liquidation, of certain notes and contracts which had previously been entirely written off. Upon the sale of those notes and contracts the corporation recorded the transaction on its books by crediting the amount of $8,000 to an account designated "gain on liquidation of assets."

As of the end of the taxable year ending January 31, 1953, the bad debt reserve account carried on the corporation's books was $78,897.15; the notes and contracts carried on the books at face value amounted to $1,538,709.98; and the actual writeoffs during the succeeding taxable year amounted to $75,978.56.

---

[1] It is stipulated that the purchaser of the notes and contracts from the corporation sustained an actual loss for the next succeeding taxable year in an amount approximating $60,000 on the collection of the notes and contracts purchased.

As of February 1, 1954 (the beginning of the taxable year involved), the corporation carried notes and contracts on its books at face value of $1,697,535.43 and carried a reserve for bad debts in the amount of $81,108.88 (which included a liability for dealers' reserve of $12,105.29) leaving a net bad debt reserve against outstanding notes and contracts of $69,003.59. During the taxable year ending January 31, 1955 (the year in question), it added $44,292.51 to its reserve for bad debts and during such year it actually charged off as bad debts $42,778.85 against the reserve. At the time of the adoption of the plan of liquidation, September 3, 1954, and prior to the liquidation of its assets and the payment of its liabilities, the corporation carried on its books a reserve for bad debts in the amount of $70,517.25.

The following schedule shows for the taxable years ending January 31, 1952, 1953, 1954, and 1955, the amount of net taxable income per the income tax returns of the corporation, after deducting the following amounts as additions to the bad debt reserve:

| Fiscal year ended Jan. 31— | Additions to bad debt reserve | Net taxable income per return |
|---|---|---|
| 1952 | $45,249.50 | $63,022.37 |
| 1953 | 82,522.47 | 103,178.82 |
| 1954 | 78,190.29 | 98,483.41 |
| 1955 | 44,292.51 | 53,833.16 |

On August 19, 1955, the corporation was dissolved under the laws of the State of Illinois. As of the date of dissolution it had distributed all of its assets. It complied in all respects with the provisions of section 337 of the Internal Revenue Code of 1954.

Pursuant to the plan of liquidation, $606,865 in cash was distributed to shareholders. The petitioners received the following amounts on the following dates:

| | Oct. 15, 1954 | July 12, 1955 | Total |
|---|---|---|---|
| Ira Handelman | $171,200 | $38,520 | $209,720 |
| Ida Handelman | 40,400 | 9,090 | 49,490 |
| Harry Freeman | 5,200 | 1,170 | 6,370 |

In addition, on or about July 15, 1955, $13,149.21 was transferred by the corporation to petitioner Harry Freeman, as escrowee for shareholders, to cover any unascertained or contingent liabilities.

The corporation, on its income tax return for the taxable year ending January 31, 1955, reported as nontaxable income, pursuant to section 337 of the Internal Revenue Code of 1954, a gain on its sale of notes and contracts in the sum of $146,541.75. It computed the reported gain as follows:

| | | |
|---|---:|---:|
| Cash consideration received for sale of notes and contracts on books as of Sept. 26, 1954, with a face value of $1,400,345.07__ | | $1,254,773.92 |
| Less—Face value reduced by unrealized gross profit included therein (adjusted basis)____ | $1,179,753.65 | |
| Deduct—Reserve for bad debts carried on books at time of sale, as per sales agreement which provided that "The purchase price for said accounts shall be the total balance owing thereon less 5 percent as an allowance for uncollectible accounts."_____ | 70,517.25 | |
| | | 1,109,236.40 |
| | | 145,537.52 |
| Add—Proceeds from sale of notes and contracts previously written off_____ | | 8,000.00 |
| | | 153,537.52 |
| Less—Sundry losses and expenses incurred in connection with sales of receivables_____ | | 6,995.77 |
| Net gain_____ | | 146,541.75 |

On its return for such year the corporation claimed as a deduction the amount of $44,292.51 which it had added to its reserve for bad debts during the year.

The respondent by notices mailed to the petitioners Ira Handelman, Ida Handelman, and Harry Freeman determined that they were liable in the respective amounts of $40,828.97, $40,828.97, and $19,519.21, as transferees of the assets of the corporation, for the income tax deficiency determined against the corporation for the taxable year ended January 31, 1955, in the amount of $40,828.97.

In each such notice the respondent explained the determination of the deficiency in income tax against the corporation. He disallowed the claimed deduction of the addition to the reserve for bad debts in the amount of $44,292.51. He also determined that the proper closing balance in the bad debt reserve should have been $34,224.74 and held that such amount constituted taxable income in the year in question. His explanation was as follows:

The additions of $44,292.51 to the reserve for bad debts claimed as a deduction for bad debts in the return of Employees Finance Corporation for the year ended January 31, 1955, is disallowed since there were no debts or accounts receivable after September, 1954. Section 166, Internal Revenue Code of 1954.

The balance in the reserve for bad debts after closing adjustments made by Employees Finance Corporation, appropriate adjustment for recoveries on debts previously charged off, and the $44,292.51 disallowed herein, was $34,224.74.

This balance was built up by additions which were allowed as deductions from income in prior years, and the need for maintaining it ceased upon disposition of all debts and accounts receivable. The balance is properly to be restored to income. In the event that any part of the $44,292.51 reserve addi-

tion claimed should be found allowable, such part is held to be an addition to the balance in the reserve for bad debts, and an addition to the amount of $34,224.74 to be restored to income.

OPINION.

The petitioners contend that the respondent was in error in disallowing the deduction of $44,292.51 claimed by the corporation, representing the addition made by the corporation to its reserve for bad debts in the year in question, and in including in the corporation's income an amount of $34,224.74, representing the balance in the reserve for bad debts in the year in question as determined by the respondent, which includes $8,000 restored by the respondent to the reserve as a recovery on debts previously charged against the reserve.

Section 166(c) of the Internal Revenue Code of 1954 provides that in lieu of specific deductions for bad debts "there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts."[2]

Essentially a bad debt reserve constitutes an estimate of the loss which can reasonably be expected to result from debts outstanding at the close of the taxable year. The ultimate question is whether the credit balance in the reserve is adequate to cover such expected losses. Under the reserve method specific debts which become worthless are charged against the reserve and serve to reduce the credit balance therein. Then the taxpayer is entitled to deduct the amount of the addition to the reserve which is necessary to bring the credit balance to the appropriate amount. *R. Gsell & Co.*, 34 T.C. 41, on appeal (C.A. 2); *O. P. Lutz*, 29 T.C. 469. And the general rule is well established that any balance in a reserve for bad debts existing when the reserve becomes no longer necessary, as for example, when all the accounts have been collected, must be included in taxable income, upon the theory that the amount of the reserve, having been previously deducted, must be restored to income. *Geyer, Cornell & Newell, Inc.*, 6 T.C. 96; *West Seattle National Bank of Seattle*, 33 T.C. 341, affd. (C.A. 9) 288 F. 2d 47; and *Arcadia Savings & Loan Association*, 34 T.C. 679, on appeal (C.A. 9), and cases cited therein.

At February 1, 1954, the corporation's reserve for bad debts was in the amount of $69,003.59. A plan of complete liquidation of the corporation was adopted on September 3, 1954, and by contract of October 6, 1954, the corporation sold all its notes and contracts.

---

[2] Section 1.166–4 of the Income Tax Regulations provides in part:

(b) *Reasonableness of addition to reserve*—(1) *Relevant factors.* What constitutes a reasonable addition to a reserve for bad debts shall be determined in the light of the facts existing at the close of the taxable year of the proposed addition. The reasonableness of the addition will vary as between classes of business and with conditions of business prosperity. It will depend primarily upon the total amount of debts outstanding as of the close of the taxable year, including those arising currently as well as those arising in prior taxable years, and the total amount of the existing reserve.

During the taxable year, prior to the date of adoption of the plan of liquidation, the corporation had charged off as bad debts an amount of $42,778.85, and had made additions to its reserve for bad debts in the amount of $44,292.51, resulting in a balance in such reserve at the time of adoption of the plan of the amount of $70,517.25. Such balance in the reserve equaled 5 percent of the face value of the notes and contracts which the corporation sold to Western Auto Stores, Inc., and it is evident that the corporation added enough to its reserve to bring the balance to $70,517.25 because of the provision in the agreement that the selling price of the notes and contracts should be the face value, less, however, in addition to a discount, an amount equal to 5 percent of such face, described as an allowance for uncollectible accounts.

The petitioners argue, in effect, that the reasonableness of the addition to the reserve must be considered in the light of the conditions existing prior to the time of the adoption and consummation of the plan of liquidation and that, so considered, the additions which had been made to the reserve up to that time were reasonable. They contend that the reasonableness is confirmed by the fact that the sales price of the notes and contracts took into account an allowance of 5 percent of face value for uncollectible accounts, and that the purchaser did later suffer loss in the collection of the notes and contracts.

Section 1.166–4 of the Income Tax Regulations quoted in the footnote provides that the reasonableness of an addition to a reserve for bad debts is to be determined in the light of the facts existing at the close of the taxable year. Since, as stated above, the basic purpose of an addition to a reserve for bad debts is to bring the credit balance in the reserve to an amount which is sufficient to cover losses which can be reasonably expected to result from debts outstanding at the close of the taxable year, and in this way more accurately reflect the income of the taxable year, we think the regulations properly provide that the reasonableness of an addition is to be determined upon the basis of conditions existing at the close of the year.

Here it is clear that after the corporation disposed of all its notes and contracts for the purpose of ceasing business, a reserve for bad debts was no longer necessary. It is also clear that the credit balance of $69,003.59 in the corporation's reserve as of the beginning of the taxable year was adequate to cover any losses which were actually sustained in the year in question. The debts which became worthless, amounting to $42,778.85, were charged against the reserve, reducing it to $26,224.74. The notes and contracts of the face value of $1,400,345.07 which were sold in the year in question did not become worthless so as to justify charging them against the reserve. The petitioner suffered no loss upon such accounts, but rather made a gain.

The stipulated adjusted basis of those assets was $1,179,753.65 and they were sold for $1,254,773.92. Clearly then the excess of face value over the amount realized did not constitute a loss realized by the corporation. Under these circumstances it would not be reasonable to make any addition to the reserve for bad debts in the year in question. We accordingly hold that the respondent properly determined that the corporation was not entitled to deduct any addition to the reserve.

It is also our conclusion that since, as stated above, the corporation sustained no loss upon the disposition of the notes and contracts and therefore no amount on account thereof may properly be charged against the reserve, there is no reason for reducing such reserve before restoring it to taxable income in the taxable year. In this respect the instant case is similar to *West Seattle National Bank of Seattle, supra*. The petitioners on brief make much of the fact that in that case there was no evidence to show that the receivables were sold for less than full face value, whereas here there is. But such factual difference is of no consequence. The determining fact in that case and this is that no loss was sustained on the sale.

The petitioners on brief also make much of the fact that the corporation, in calculating the gain on the sale of the notes and contracts which was reported in the return as nontaxable gain under section 337 of the Internal Revenue Code of 1954,[3] reduced adjusted basis by the amount of the balance in the reserve. However, as we pointed out in the *West Seattle National Bank* case, the income arising as a result of the cessation of the necessity of maintaining a reserve does not arise from the sale of assets (a reserve for bad debts is neither an asset nor a liability and cannot be transferred), and section 337 of the Internal Revenue Code of 1954 has no application.

Following the authorities cited hereinabove we hold that the corporation was in receipt of ordinary income in the year in question upon the cessation of the necessity for the maintenance of its reserve for bad debts. Since, as held above, the additions to the reserve in the amount of $44,292.51 were improper, these will, of course, be eliminated from the reserve in determining the amount which must be included in the corporation's income for the year in question.[4] The elimination of such additions reduces the reserve to $26,224.74.

There remains the question of the proper treatment to be accorded the additional amount of $8,000 received by the corporation upon

---

[3] Section 337 provides that if a corporation adopts a plan of complete liquidation after June 22, 1954, and within a 12-month period beginning after the date of the adoption of the plan, distributes all of its assets in complete liquidation, then no gain or loss shall be recognized to the corporation from the sale of its property within the 12-month period.

[4] In passing it may be noted that if the corporation were entitled to deduct an addition to the reserve in the amount of $44,292.51, such amount would remain in the reserve and would necessarily be restored to taxable income, thus completely offsetting the benefit of the deduction.

the sale of other notes and contracts which the corporation had previously charged against the reserve for bad debts. The respondent restored this amount of $8,000 to the reserve and thus included it in the corporation's taxable income for the year in question. The petitioners point out that the $8,000 was not received from the obligors, but constituted gain on the sale of the assets, the adjusted basis being zero, and contend that such gain comes within the nonrecognition provisions of section 337.

The respondent's determination does not purport to tax the $8,000 as gain from the sale. What the respondent did was to restore to the reserve for bad debts the amount which the corporation ultimately realized upon the notes and contracts which the corporation had previously determined to be worthless and charged against the reserve. The income arises, not from the sale, but from the requirement that the amount of the reserve must be included as ordinary income when the need for the reserve ceases. The prior charges against the reserve served to reduce the balance in the reserve and thereby permitted the deduction of greater additions to the reserve. The amount of the reserve, including the $8,000 restored thereto, in reality represents ordinary income of the corporation which has not been subjected to tax. We think it proper, under the reserve method, that subsequent realizations (whether by payment from the obligors or by way of sale) on obligations previously charged against the reserve be restored to the reserve and thereby make proper adjustment because of the prior tax benefit. Such adjustment is inherent in the requirements of section 1.166–4 of the Income Tax Regulations [5] relating to reserves for bad debts, promulgated under the Revenue Act of 1954. The propriety of such adjustment was recognized in *R. Gsell & Co.*, *supra*. It may be added that this fundamental principle has also been recognized by Congress.[6] See and cf. *Ohio Loan & Discount Co.*, 3 T.C. 849, and *T. O. McCamant*, 32 T.C. 824. In the case of a continuation of the business of a taxpayer the effect of the restoration of the realization to the reserve would be to reduce the amount of any future deductible addition to the reserve. Where,

---

[5] Section 1.166–4 of such regulations provides in part:

(2) *Correction of errors in prior estimates.* In the event that subsequent realizations upon outstanding debts prove to be more or less than estimated at the time of the creation of the existing reserve, the amount of the excess or inadequacy in the existing reserve shall be reflected in the determination of the reasonable addition necessary in the current taxable year.

[6] In S. Rept. No. 1631, 77th Cong., 2d Sess., 1942–2 C.B. 504, 566, relating to the enactment of sec. 22(b)(12) of the 1939 Code (dealing with the recovery exclusion upon the recovery of bad debts and other items), it is stated:

The amendments made by this subsection do not apply to recoveries on account of bad debts previously charged or chargeable against a reserve, by a taxpayer on the reserve method of treating bad debts, inasmuch as the amount of such recoveries is not taken into income as such but is merely *credited to the reserve account* and decreases the amount of the addition to the reserve which has previously been taken as a deduction in lieu of a deduction for specific bad-debt items. [Emphasis supplied.]

as here, the taxpayer does not continue in business, the restoration serves to increase the amount of the reserve which must be treated as taxable income. We cannot conclude that Congress in enacting section 337 of the 1954 Code intended to abrogate the above fundamental principles.

It is our conclusion that the respondent properly restored the amount of $8,000 to the reserve for bad debts and that he correctly determined that the resulting amount of the reserve, $34,224.74, constituted ordinary income to the corporation in the year in question.

*Decisions will be entered for the respondent.*