J. E. HAWES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5053–63. Filed August 6, 1965.

*William C. Hill*, for petitioner.
*George T. Rita*, for respondent.

OPINION

ATKINS, *Judge:* The respondent determined a deficiency in income tax for the taxable year 1960 in the amount of $79,895.26. The petitioner having conceded one of the issues, the only issue remaining is whether the respondent erred in determining that the balance in petitioner's reserve for bad debts at the time in 1960 that the petitioner sold its assets, including its notes and accounts receivable, constituted ordinary income to the petitioner.

All the facts are stipulated and the stipulation is incorporated herein by reference.

The petitioner is an Illinois corporation founded in 1908 which, prior to August 2, 1960, was engaged in the business of manufacturing and distributing high-grade shade cloth, rollers, window shades, and allied products under the corporate name of Illinois Shade Cloth Corp. It has consistently maintained its accounting records and filed its income tax returns on an accrual method of accounting. It filed its return for the taxable year 1960 with the district director of internal revenue at Chicago, Ill.

On June 24, 1960, petitioner entered into a contract with Slick Airways, Inc. (hereinafter referred to as Airways), in which it was agreed that Airways would purchase substantially all of petitioner's assets as of June 30, 1960, the closing to be effected August 2, 1960. On July 6, 1960, the petitioner adopted a plan of complete liquidation within the meaning of section 337 of the Internal Revenue Code of 1954. On August 2, 1960, the sale was consummated.

Among the assets sold to Airways were petitioner's accounts receivable which, as of June 30, 1960, had a face value of $1,153,898.61. Throughout the years, petitioner's deductions for bad debts on its Federal income tax returns represented additions to a reserve for bad debts rather than specific receivables which became uncollectible. As of June 30, 1960, the balance in its reserve for bad debts (prior to a subsequent adjustment made by the respondent not herein contested) was $113,285.75. Petitioner and Airways negotiated a specific selling price for each category of assets sold. The negotiated selling price for the receivables was established as follows:

| | |
|---|---|
| Notes and accounts receivable | $1,153,898.61 |
| Less: Allowance for doubtful accounts | 113,285.75 |
| | 1,040,612.86 |

Airways entered the receivables purchased from petitioner on its books at a cost of $1,040,612.86.

Following the consummation of the sale of its assets on August 2, 1960, petitioner distributed all of its assets to its shareholders in complete liquidation. Subsequently, at some time not disclosed by the record, petitioner changed its name to J. E. Hawes Corp. and at the time of the trial was engaged in efforts to wind up its affairs.

The respondent, in the notice of deficiency, reduced the balance in the reserve for bad debts as of June 30, 1960, to $93,644.72 (the difference being the addition to the reserve for 1959 of $19,641.03 which the respondent disallowed and which is not contested by the petitioner), and determined that the amount of $93,644.72 constituted "ordinary income in 1960 since the need for maintaining the reserve ceased when the accounts receivable were disposed of in 1960."

The petitioner contends that the respondent was in error in including in its income the balance in the reserve for bad debts in the year in question.

Section 166(c) of the Internal Revenue Code of 1954 provides that in lieu of specific deductions for bad debts "there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts."

Essentially a bad debt reserve constitutes an estimate of the loss which can reasonably be expected to result from worthlessness of debts outstanding at the close of the taxable year. Under the reserve method when specific debts become worthless they are charged against the reserve and serve to reduce the credit balance therein. Then, if any amount which has been charged against the reserve is subsequently collected the collection does not result in the receipt of income but the amount collected is credited to the reserve. If the credit balance in the reserve at the end of the year is not adequate to cover the reasonably expected loss with respect to the debts outstanding at the end of the year, then an addition is made to the reserve to bring the credit balance to the appropriate amount, and such addition is deductible. *M & E Corporation*, 7 T.C. 1276; *O. P. Lutz*, 29 T.C. 469; *R. Gsell & Co.*, 34 T.C. 41, reversed on another issue (C.A. 2) 294 F. 2d 321; *Ira Handelman*, 36 T.C. 560; and secs. 1.111–1(a)(2), 1.166–1(f), and 1.166–4 of the Income Tax Regulations under the 1954 Code and corresponding provisions of prior regulations. And the general rule is well established that any balance in a reserve for bad debts existing when the reserve becomes no longer necessary must be included in taxable income, since the amount of such balance represents amounts which have been previously deducted. *Geyer, Cornell, Newell, Inc.*, 6 T.C. 96; *West Seattle National Bank of Seattle*, 33 T.C. 341, affd. (C.A. 9) 288 F. 2d 47; *Arcadia Savings & Loan Association*, 34 T.C. 679, affd. (C.A. 9) 300 F. 2d 247; *Ira Handelman, supra;* and cases cited therein.

The petitioner does not dispute this general rule, but contends that it has no application in a situation such as is here presented. The petitioner reasons that the amount of a reserve represents the amount of bad debts predicted and previously deducted and that no amount of such reserve is required to be restored to income unless, by collection of the receivables or the sale thereof, there has been a recovery of the amount which was previously deducted. It states that only to the extent that the receivables are sold at a sum above net value (face value of the receivables less the amount of the reserve), which did not occur here, is there any justification for restoration of the amount of the reserve or any portion thereof to income. It contends that the reserve for bad debts must be charged with the unrecovered sum and that when that is done in the instant case there remains no amount in the reserve to be restored to income.

We cannot agree with this contention of the petitioner. As indicated above, specific debts become a charge against the reserve only to the extent they become worthless.[1] If a debt is sold at a loss prior to being charged off, the loss does not constitute a bad debt loss, but rather a loss upon the sale of property. *Maurice Levy*, 46 B.T.A. 423, affd. (C.A. 2) 131 F. 2d 544, certiorari denied 318 U.S. 780;[2] *Benedum v. Granger*, (C.A. 3) 180 F. 2d 564; *Reed v. Commissioner*, 45 B.T.A. 1130, affd. (C.A. 4) 129 F. 2d 908; and *Von Hoffman Corp. v. Commissioner*, (C.A. 8) 253 F. 2d 828, affirming a Memorandum

---

[1] Presumably, to the extent any of petitioner's accounts become worthless prior to their sale, proper adjustment was made on account thereof. The petitioner's income tax return for 1960 shows that an amount of $2,317.82 was charged against the reserve in 1960.

[2] In the *Levy* case we stated in part:

The only question before us is whether or not petitioner is entitled to a deduction for a partial bad debt with respect to the account receivable sold by petitioner in the taxable year or whether he is limited in his deduction by section 117 of the Revenue Act of 1936. Petitioner contends that he ascertained the account to be partially uncollectible and charged off that amount in the taxable year. Respondent argues that the sale of the account receivable gave rise to the loss and that the transaction was a sale or exchange of a capital asset within the purview of section 117.

\*　　\*　　\*　　\*　　\*　　\*　　\*

We do not disagree with petitioner's claim that he ascertained the account to be partially worthless. Petitioner was in full possession of all facts concerning the debtor's condition and the fact that he sold the account for a price far less than its face amount is strong indication of ascertainment of partial worthlessness. But this fact does not change what occurred. The debt was sold and at the time the charge-off was made on the books of the petitioner he was not in fact the owner of the account receivable. *McClain v. Commissioner*, 110 F. 2d 878, affd. 311 U.S. 527; *Leslie H. Reed*, 45 B.T.A. 1130.

We may pass the query as to what would have happened had the partial write-off taken place in a prior year when petitioner was still the owner of the debt. Nor are the cases in point which deal with a settlement made directly between a creditor and debtor where the debt is liquidated for less than the amount due. Cf. *James R. Stewart*, 39 B.T.A. 87. In such circumstances the creditor would ordinarily have a right to charge off the difference.

What actually is done rather than what might have been done usually determines the tax consequences. Here there was, within the taxable year, before the actual charge-off of the indebtedness, the sale of the account. The facts bring the case squarely within the provisions of section 117 and, in our opinion, that fact must control, with the consequent limitation of the loss from the sale.

Opinion of this Court. Cf. *Mac Levine*, 31 T.C. 1121. Hence, such a loss is not chargeable against the reserve for bad debts.[3]

Thus, if the petitioner sustained any loss upon the sale of its receivables (which cannot be ascertained with certainty upon this record) the reserve for bad debts would not be affected in any way. And the fact that section 337 of the Code would preclude the recognition of any gain or loss upon the sale of petitioner's assets would not affect our conclusion that the reserve must be restored to income, since the income resulting from the cessation of the necessity of maintaining a reserve does not arise from the sale of assets. *Ira Handelman, supra,* and *West Seattle National Bank of Seattle, supra.*

For the reasons stated hereinabove, we conclude that respondent correctly determined that the balance in the bad debt reserve is properly includable as ordinary income to petitioner in 1960.

*Decision will be entered for the respondent.*

---

[3] We so held in *Cardinal Finance Co.*, T.C. Memo. 1963–24.