Dixie Furniture Company v. Commissioner.
Dixie Furniture Co. v. Commissioner
Docket No. 3081-64.
United States Tax Court
T.C. Memo 1966-278; 1966 Tax Ct. Memo LEXIS 9; 25 T.C.M. (CCH) 1441; T.C.M. (RIA) 66278; December 28, 1966
*9 Held, that the respondent did not err in disallowing as a deduction a portion of the amount of the petitioner's addition to its reserve for bad debts for the taxable year in question. W. G. Dinning, Jr., 538 Rightor St., Helena, Ark., for petitioner. Charles G. Barnett, for respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined a deficiency in income tax for the taxable year ended April 30, 1962, in the amount of $2,251.14. The issue presented is whether the respondent erred in disallowing as a deduction a portion of the amount of the petitioner's addition to its reserve for bad debts for that year. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. The petitioner *10 is an Arkansas corporation chartered May 1, 1948, with its principal place of business in Helena, Arkansas. Its Federal income tax return for the taxable year ended April 30, 1962, was filed with the district director of internal revenue, Little Rock, Arkansas. The petitioner is engaged in the retail sale of furniture and appliances in the eastern part of Arkansas, and it operates 6 stores in Helena, Forrest City, Brinkley, Wynne, Marvell and Cherry Valley, Arkansas. Many of the petitioner's sales are made on a no-down-payment basis and between 90 and 95 percent of its sales are made on the installment basis over an average period of about 30 months. The petitioner solicits and advertises for this type of business. Its customers are lower to middle income families. The books and records of the petitioner have been maintained on the accrual method since its incorporation, and the petitioner has always used the reserve method for claiming deductions on account of bad debts. Specific debts which became worthless during any taxable year were charged by the petitioner against the reserve and served to reduce the credit balance therein. If any amount so charged against the reserve was *11 subsequently collected, such amount was credited to the reserve. The petitioner repossessed about 5% of the merchandise sold by it. When merchandise was repossessed, one of the petitioner's personnel would appraise such merchandise and, if the appraisal was less than the amount still due but unpaid thereon, the difference would be charged off as a specific bad debt against the reserve account. During the years since its incorporation, with one exception, [1] the year-end balance in the petitioner's accounts receivable account has increased steadily from $168,212.45 for the taxable year ended April 30, 1949 to $676,857.02 for the taxable year ended April 30, 1962. During the taxable years ended April 30, 1949 through April 30, 1961, its net bad debts (specific charge-offs less recoveries) varied between 9% and 4.3% of outstanding accounts receivable, the average for the taxable years ended April 30, 1959, 1960 and 1961 being about 1.5%. Over the years 1949 through 1961, the petitioner's reserve for bad debts varied between 6% and 13% of outstanding accounts receivable, the percentage for the taxable years ended April 30, 1959, 1960 and 1961 being constant at 8%. The petitioner's returns *12 for the taxable years ended April 30, 1959, 1960, and 1961 were examined by the respondent who agreed to the deduction of additions to the reserve for bad debts sufficient to maintain the reserve at 8% of outstanding accounts receivable. At April 30, 1961, the credit balance in the petitioner's bad debt reserve was $49,819.44. During the taxable year in question specific debts in the amount of $20,938.89 became worthless, and this amount was charged against the reserve and served to reduce the credit balance therein to $28,880.55. During such year bad debts in the amount of $8,306.78 which had been written off in prior years were recovered, and such amount was added to the reserve, increasing the credit balance therein to $37,187.33. As of April 30, 1962, the balance in the petitioner's accounts receivable account was $676,857.02. As of that time the petitioner made an addition to the reserve in the amount of $16,961.23 in order to maintain the reserve at 8% of accounts receivable, thereby increasing the credit balance in the reserve to $54,148.56. The amount of $16,961.23 was claimed *13 as a deduction by the petitioner on its return for the taxable year ended April 30, 1962. In the notice of deficiency the respondent disallowed as a deduction $4,329.12 of the amount of $16,961.23 claimed, stating: You claimed a deduction for bad debts under the reserve method. It has been determined that your reserve balance for bad debts as of April 30, 1962, should be maintained at $49,819.44, the balance at April 30, 1960, and April 30, 1961. Your allowable deduction for bad debts is the net charge-offs for the year computed as follows: Amount charged against
reserve
$20,938.89
Amount of recoveries credited
to reserve
8,306.78
Net charge-offs
$12,632.11
Opinion Section 166(c) of the Internal Revenue Code of 1954[2] provides for the deduction of a reasonable addition to a reserve for bad debts. Under this section the reasonable addition is that amount necessary to bring the balance in the reserve to an amount which can be reasonably expected to cover anticipated losses with respect to debts outstanding at the end of the year. M & E Corporation, 7 T.C. 1276; O. P. Lutz, 29 T.C. 469; Ira Handelman, 36 T.C. 560; *14 J. E. Hawes Corporation, 44 T.C. 705; and section 1.166-1(f) of the Income Tax Regulations.
The respondent determined that the amount of $49,819.44 (the amount of the reserve at the end of the prior year) constituted an adequate reserve for the year in question and therefore disallowed as a deduction the addition claimed by the petitioner to the extent it increased the reserve balance above $49,819.44. The petitioner refers to the fact that the respondent had examined its returns for the three years prior to the taxable year in question and had agreed to the deduction of additions to the reserve for bad debts sufficient to maintain such reserve at 8% of the outstanding accounts receivable, and it contends *15 that the respondent erred in not allowing for the taxable year in question a sufficient amount to maintain the reserve at 8% of the outstanding accounts receivable. The respondent is not bound by his action with respect to the prior years. C. P. Ford & Co., 28 B.T.A. 156. [3] And it has been held that since the respondent, under the applicable statute, is vested with a discretion in determining what constitutes a reasonable addition to a reserve for bad debts, his determination is entitled to more than a mere presumption of correctness, and that the taxpayer has the burden of showing that the respondent abused his discretion. Maverick-Clarke Litho Co. v. Commissioner, (C.A. 5) 180 F. 2d 587, affg. 11 T.C. 1087; S. W. Coe & Co. v. Dallman, (C.A. 7) 216 F. 2d 566; and Roanoke Vending Exchange, Inc., 40 T.C. 735. *16 The petitioner, in support of its position, introduced in evidence a letter from the National Retail Furniture Association setting forth information concerning three furniture companies which, according to testimony of A. B. Lewis, secretary-treasurer and manager of petitioner, had operations similar to those of the petitioner. Such letter indicated that one of such companies maintained a reserve of about 4% of net sales, another maintained its reserve at about 7% of accounts receivable, and the third maintained its reserve at about 10% of accounts receivable. However, we cannot accept this as proof that the petitioner's reserve for the year in question should be maintained at 8% of its outstanding accounts receivable. There is no evidence that the reserves used by such companies were reasonable, or that those companies had the same experience with respect to uncollectible accounts as the petitioner had. See Hammonton Investment & Mortgage Company v. Commissioner, (C.A. 3) 284 F. 2d 950, affg. a Memorandum Opinion of this Court. Under the statute, the ultimate question is whether the balance in the reserve at the end of the year is adequate to cover the expected worthlessness *17 of outstanding debts and not whether the proposed addition is sufficient to absorb the estimated losses. Ira Handelman, supra; Roanoke Vending Exchange, Inc., supra; and section 1.166-4(b) of the Income Tax Regulations. The past experience of the taxpayer in collecting accounts receivable is a reliable guide for measuring probable future losses. Home Ice Cream & Ice Co., 19 B.T.A. 762; Roanoke Vending Exchange, Inc., supra; and Patterson v. Pizitz, (C.A. 5) 353 F. 2d 267, cert. denied 383 U.S. 910. The evidence shows that for its fiscal years ended April 30, 1949 through April 30, 1961, the net amount of specific debts which became worthless varied from.9% to 4.3% of outstanding accounts receivable. In the fiscal years ended April 30, 1959, 1960, and 1961 (when the petitioner maintained a balance in its reserve of 8% of outstanding accounts receivable), its average net loss on specific debts amounted to about 1.5% of outstanding accounts receivable. At the end of the taxable year in question, petitioner had outstanding accounts receivable of $676,857.02. The amount which the *18 respondent determined to be an adequate reserve as of such time, namely, $49,819.44, amounts to approximately 7.4% of outstanding accounts receivable. The petitioner introduced no evidence to show that the losses which might reasonably be anticipated on the accounts receivable as of the end of the taxable year in question would be any greater. Under the circumstances, we must conclude that the petitioner has failed to prove that the respondent erred in disallowing as a deduction a portion of the addition to the reserve claimed by the petitioner. Indeed, in the light of the petitioner's experience in prior years, it appears that the respondent's action was fully justified. Decision will be entered for the respondent. Footnotes
1. From April 30, 1960 to April 30, 1961, the account decreased from $622,743.00 to $622,381.42.↩
2. Sec. 166 of the 1954 Code provides in part as follows: (a) General Rule. - (1) Wholly worthless debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. * * *
(c) Reserve for Bad Debts. - In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts.↩
3. In that case we stated in part: The petitioner insists that the method already tacitly approved by the Commissioner through his allowance of the earlier additions to the reserve bespeaks the reasonableness and deductibility of the 1929 addition. This would mean that the Commissioner had discretion not as to the addition and its reasonableness, but only as to the initial approval of the method to be annually employed; that once the method is approved, the amount, however inordinately large or small in the light of experience, may not be disallowed or increased. Manifestly the discretion was not intended to be so restricted. * * *.↩